Michael Catalano, J.
This is an action "brought by a husband against his estranged wife to impress a constructive trust *741 upon property allegedly owned by defendant and for an accounting. After denying liability generally, defendant pleads the 10-year Statute of Limitations.
This action was referred to Hon. Lee L. Ottaway, an Official Referee of this court, to hear, try and determine; it was heard by him on November 16, 1960, but before making his decision, he died.
The parties have stipulated that this court in the person of Hon. Michael Catalano, as a Justice thereof, may determine the issues based upon the pleadings and a transcription of the testimony heard by the Referee. This written stipulation, subscribed by both attorneys, was made on November 27, 1961, during the term of Supreme Court held in and for Niagara County, while Mr. Justice Catalano was presiding.
This procedure is proper. (See Civ. Prac. Act, §§ 78, 79, 79-a, 80, 81; Rules Civ. Prac., rule 4.)
The parties were married October 6, 1933; they reside in the City of Niagara Falls, New York. Plaintiff is unable to read and write the English language.
Plaintiff came to the United States in 1912. He was in the First World War. Upon his return, he started a “hot dog stand” business in 1920. Later he owned a restaurant at 17 East Niagara Street. In 1924, he purchased another business known as the “Homestead,” at 41 West Niagara Street for $15,500. In 1930, he met defendant who worked as a waitress at a resaurant owned by his brother; she was earning $10 weekly and had $200 to $300 in a bank. He acquired a home on Pine Avenue for $5,000 and two lots on Buffalo Avenue. In March, 1932, defendant came to work for plaintiff as a waitress. After their marriage, she continued to work without a salary. In 1946, he transferred said properties to her because he was threatened with a possible lawsuit; but no lawsuit was ever brought against him as expected. This was done pursuant to legal advice that she had obtained in order to make him ‘ ‘ judgment proof.” When these transfers were made, it was agreed between them that she would reconvey them upon request when the threatened court action would be finally determined. This was her plan, not his.
In 1940, plaintiff learned that the State of New York was going to condemn the real property. So he arranged to purchase another business and certain real property known as the “Honeymoon Grill” at 215 Main Street. He transferred the Pine Avenue property as a down payment to purchase 215 Main Street; on December 2, 1940, she received a deed in her name and both signed a mortgage thereon for $2,500 running to the *742 Niagara Permanent Savings and Loan Association as mortgagee.
A liquor license to sell beverages for consumption on the premises on Niagara Street to do Summer business was obtained in her name. Then from 1940 to 1950, the license to sell alcoholic beverages for consumption on the Niagara Street premises was in his name, although she handled all the money and paid the bills as directed by him.
In 1950, the State condemned the Niagara Street property for the purchase price of $29,000, $26,000 of which was paid to her to be used to remodel the Honeymoon Grill at 215 Main Street.
In 1951, she conveyed the two lots on Buffalo Avenue to him. In 1957, he sold them for $13,000 which he used as a part payment to purchase an apartment house on Ferry Avenue and Ninth Street for a total of $30,000. He also paid $4,000 out of his moneys so that the total down payment was $17,000. Title to this property was taken in their names jointly. She collected the rents therefrom.
In 1946, he purchased a tourist home consisting of real property at 351 Main Street for $12,000, paying cash. In 1956, this property was condemned by the City of Niagara Falls which paid $39,800. A home was purchased on Buffalo Avenue for $18,000; $10,000 was paid on bills owing by the Honeymoon Grill; $11,800 was retained by her. She received title to the Buffalo Avenue property.
Both worked at the Honeymoon Grill, the liquor license to which remained in her name from 1940 to the present time.
In 1946, she did not return the Homestead back to him because she said, “ What is yours is mine and what is mine is yours. It does not make any difference.”
In 1959, he finally requested the return of these properties and money; as a result, in June, 1959, she started an action for separation against him. She started eviction proceedings to have him evicted from the home on Main Street. In 1960, she had bim arrested for disorderly conduct. She unsuccessfully tried to have him committed to the Buffalo State Hospital; he was released after instituting a habeas corpus proceeding. Since then, he has been living with a sister at 201 Main Street.
At present he is destitute. Although in 1959 she received $15,000 “ clear money” from the sale of the Buffalo Avenue property and had all the money involved in the businesses, she refused to turn any of it over to him upon request. She also refused to transfer any of said property to him after a demand therefor. She maintaintd a checking account at the Marine *743 Trust Company, Falls Street office, and savings accounts at the Niagara County Savings Bank and the Niagara Permanent Savings & Loan Association.
Her accounts have been kept by a very capable accountant, one Mr. Heary.
She gave $3,000 to her daughter by a prior marriage, one Cora Li Brize. She borrowed $6,000, mortgaging 624 Buffalo Avenue in September, 1959, without giving him notice of it.
She has taken extended vacations to the southwest and west coast.
Before the commencement of this action, she paid all the bills he told her to pay.
In 1940 he was not able to read or write; now he can “ read a little bit.” She could read and write, so he depended upon her in these respects. The complaint alleges: “ 5. That the plaintiff, Bernard Falcone, is unable to read and write the English language; ” this the answer admits.
Regardless of statute, the courts of this State recognize a constructive trust affecting an interest in real property where a confidential relation would be violated by repudiation of an orally declared trust agreement. (Foreman v. Foreman, 251 N. Y. 237, 240.) The plaintiff has the burden of proving the constructive trust (Cassidy v. Cassidy, 309 N. Y. 332, 335), which may spring from a confidential relation of husband and wife; a promise, express or implied, to retain the land in trust for the other; payment of consideration for the promise by the innocent promisee; unequivocal acts of confirmation and performance; unjust enrichment to the promisor if repudiation be allowed; a breach of the promise; the extent of the price paid will determine the quantum of the trust to be enforced. (See Wood v. Rabe, 96 N. Y. 414, 422, 427; Harrington v. Schiller, 231 N. Y. 278, 283-284; Sinclair v. Purdy, 235 N. Y. 245, 253; Foreman v. Foreman, 251 N. Y. 237, 241, 242, supra.)
Here, the parties are husband and wife. She conceived a plan, assisted by a lawyer, to have him transfer his real property, fully paid for by him, to her. The purpose was, as she explained it to her illiterate husband, to protect him from an impending lawsuit which never was brought. She promised to return all after such litigation. She confirmed the trust by her reconveyance to him of the two lots on Buffalo Avenue. In June, 1959, she breached her promise to convey the remaining property to him, by a series of acts intended to destroy the marriage, his reputation, his home, his mind and his means of livelihood. She rendered him destitute, sued him for separation, tried to evict him from his home, had him arrested for disorderly con *744 duct, sent him to the Buffalo State Hospital for the insane, forced him to g’ain his freedom therefrom by means of court action, forced him to live with his sister. In the face of such tactics by her to retain all of his assets contrary to her maritally sacred promise to return them, equity will do justice.
Of course, if he had intended to, and successfully did, hinder, delay and defraud his creditor by his own conduct, he would not be a fit subject of equitable consideration (Pattison v. Pattison, 301 N. Y. 65, 73-74), but, in fact, no creditor was prejudiced because the feared court action never was instituted.
It is contended that since a liquor license was obtained in her name, no right of action can spring from an illegal contract. (Carmine v. Murphy, 285 N. Y. 413, 416.) The public interest, apart from these parties as individuals, is involved.
Generally, parties to an illegal transaction in pari delicto may not judically enforce it, so that they are left where they are, whether the contract be executory or executed. (Flegenheimer v. Brogan, 259 App. Div. 347, affd. 284 N. Y. 268.) The court’s primary "concern is not the defendant’s position, but whether the plaintiff should be denied a recovery in order to promote the public interest, for what injures the public is void. (Fearon v. Treanor, 272 N. Y. 268, 272.) Thus, an action to impress a trust upon a liquor business owned by a husband, the liquor license issued by the State Liquor Authority therefor being in the name of his wife, will be dismissed because he had failed to disclose his interest to the Authority. ‘‘ While plaintiff’s agreement with his wife constitutes an act which is malum prohibitum, such agreements cannot form the basis of an action except where the statute violated is one designed to protect one set of men from another set of men more advantageously situated; and the Alcoholic Beverage Control Law is not such a statute.” (O’Connor v. O’Connor, 263 App. Div. 820, affd. 288 N. Y. 579.)
Nevertheless, the complaint should not be dismissed, unless the legal part of the business is so interwoven with the illegal that it is impossible to separate them, for contracts will be enforced against a defense of illegality, unless illegal taint affects the whole. (Rosenblum v. Frankel, 279 App. Div. 66, 67.) Thus, where possible, the business conducted under a liquor license will be separated from such property rights as are not directly connected therewith; by excision, the business interests would stay with the licensee, but the nonbusiness interests would be allotted to the cestui que trust or beneficiary of the constructive trust. (Courtney v. Riordan, 192 Misc. 53, 57.)
*745 In the case at bar, plaintiff originally owned or paid for all the properties in the defendant’s name, including the tavern business located at 215 Main Street, the liquor license for which is in her name. Unless barred by the Statute of Limitations, he is rightfully entitled to all the trust corpus, excluding such business.
The applicable statute provides: ‘ ‘ An action, the limitation of which is not specifically prescribed in this article [Art. 2. Limitation of Time], must be commenced within ten years after the cause of action accrues.” (Civ. Prac. Act, § 53.)
The case of Scheuer v. Scheuer (308 N. Y. 447) does not apply here because no promise to return was involved; the husband failed to place title to the real property in the joint names of himself and his wife; as of that moment, the wife’s cause of action accrued, after 10 years it was barred.
Where the trust agreement provides for a return of property to the plaintiff upon demand, the clear and positive refusal to reconvey marks the accrual of plaintiff’s cause of action. (Woursell v. Woursell, 208 Misc. 415, 417; Pagano v. Pagano, 207 Misc. 474, 477, affd. 2 A D 2d 756.)
Here, in 1946, she did not refuse to return the properties to him; instead, she led him to believe that their agreement was still in effect by using ambiguous words ending with: “It does not make any difference.” Finally, in 1959, she clearly and positively repudiated her promise to return by her words and actions, starting with the separation action. Therefore, this action is not barred.
Judgment is granted to plaintiff as follows: A constructive trust is impressed upon defendant’s interests in 215 Main Street, 624 Buffalo Avenue and 502 Ninth Street, in favor of plaintiff; defendant shall forthwith convey all of her right, title and interest therein to plaintiff, except for the business known as “ Honeymoon Grill; ” defendant is the sole owner of the tavern business, known as the “Honeymoon Grill,” together with all stock and cash on hand, all personal property and debts incident thereto; no accounting need be given by defendant to plaintiff, except that she shall pay him $11,800 which she derived from the sale of 351 Main Street. Prepare and submit judgment accordingly.