Btjbke, J.
This action, brought by plaintiff as the owner of real property, seeks, in effect, to remove a cloud on title. Defendant, the owner of record, conveyed the property to plaintiff in 1950. Plaintiff did not record this deed and it is now lost. The specific relief requested is a decree compelling the execution of a replacement deed. Although these simple affirmed findings of fact warrant the relief requested, the Appellate Division has reversed a judgment for plaintiff and dismissed the complaint on the theory of “ unclean hands ” because of a certain transaction concerning the property that occurred prior to that sued on here.
In 1934 Jacob Landau, the sole stockholder and concededly alter ego of plaintiff corporation, caused it to convey the subject property, together with other property, to his son, Alfred Landau, without consideration, and for the purpose of concealing it from his creditors. Alfred agreed to hold the property for his father’s benefit. It also appears that Jacob Landau filed a petition in bankruptcy in 1945 in which he swore that he had no interest in real property. In 1950, Alfred, at his father’s request, discharged his oral promise of 1934 by conveying the subject property to the defendant Chazanof, the son-in-law of Jacob Landau. This conveyance was also without consideration. The courts below have found that, simultaneously with the conveyance to him, defendant orally promised to convey to plaintiff, and did in fact execute and deliver a deed to plaintiff.
In view of the ground upon which the Appellate Division has reversed, it is important to note that any connection between defendant’s promise to convey to plaintiff and the illegality of the conveyance to Alfred Landau in 1934 would be relevant only if plaintiff were suing on that promise. In such a case we would be called upon to apply the rule that the unclean hands doctrine bars only causes of action founded in illegality or immorality. (Dering v. Earl of Winchelsea, 1 Cox Eq. 318 [1787]; Railroad *286 Co. v. Durant, 95 U. S. 576; Stone v. Freeman, 298 N. Y. 268; Wood v. Hill, 214 App. Div. 417, 423.) This, in turn, would require an examination into the motive and circumstances surrounding the conveyance to defendant, to which his promise to convey to plaintiff was incident. (2 Pomeroy, Equity Jurisprudence, § 403, pp. 139-142.)
This case, however, presents no such issue. Plaintiff is not seeking to enforce a contractual duty of defendant against which illegality could be argued (Reiner v. North Amer. Newspaper Alliance, 259 N. Y. 250; McConnell v. Commonwealth Pictures Corp., 7 N Y 2d 465), or to enforce an “ inequitable ” interest in real property, in bar of which unclean hands could be raised (as where the “ equity” lay in a promise given in consideration of a fraudulent conveyance, Pattison v. Pattison, 301 N. Y. 65; Flegenheimer v. Brogan, 284 N. Y. 268). However vulnerable to attack may have been defendant’s promise to convey to plaintiff, and we express no opinion on this, that promise has been fully performed. The property has been conveyed to plaintiff, who now holds title, both legal and equitable. Defendant has no interest whatever in the property. (Robertson v. Sayre, 134 N. Y. 97; Jackson ex dem. Malin v. Garnsey, 16 Johns. 189; Paddon v. Williams, 1 Robt. 340 ; 2 Moore, Fraudulent Conveyances, 645.) It is established by the unanimous assent of authority that a voluntary reconveyance to the fraudulent grantor, even from the immediate fraudulent grantee, is effective as between the parties and is entitled to the protection of the courts in its enjoyment. (2 Pomeroy, Equity Jurisprudence, § 401a, p. 110; 2 Moore, Fraudulent Conveyances, 653-654.) Such incidental protection of ownership is typified in cases where a reconveyance to a fraudulent grantor subsequently required the assistance of the courts in replacing a lost deed. (Moore v. Livingston, 14 How. Prac. 1, revd. on evidentiary grounds 28 Barb. 543; O’Gasapian v. Danielson, 284 Mass. 27, 34; Springfield Homestead Assn. v. Roll, 137 Ill. 205.)
It is suggested, nevertheless, that moral considerations of fundamental importance require a different result in this case. The short answer, given at Trial Term (per Livoti, J.), is that equity is not an avenger at large (2 Pomeroy, Equity Jurisprudence, § 399; Rice v. Rockefeller, 134 N. Y. 174, 187). Conceding that the relief sought in this case is of equitable *287 origin, the maxim must be applied only where the plaintiff has dealt unjustly in the very transaction of which he complains. It must also be remembered, as we are reminded by the late Professor Zechariah Chafee, that moral indignation against the plaintiff must operate, not in a vacuum, but in harmony with other important purposes and functions of the substantive law involved. As he criticized the application of the unclean hands doctrine in a situation similar to that here present, “ This ethical attitude seems entirely out of place. "What ought to count is the strong social policy in favor of making the land records furnish an accurate map of the ownership of all land in the community. Whatever A’s old misdeeds, he is the lawful owner of this lot and the records ought to show this fact. The existing record falsely makes B owner. It may mislead scores of honest citizens — people who have strong reasons for wishing to buy the lot, such as creditors of A, creditors of B, or lawyers drawing deeds of adjoining lots who are anxious to insert an accurate description. What is the sense of perpetuating an erroneous land record in order to penalize A for past misdeeds by causing him inconvenience 1 [Footnote omitted.] Better regard his dirty hands as washed during the lapse of twenty years rather than mess up the recording system.” (Chafee, Some Problems of Equity, 21-22 [1950].)
We find this reasoning persuasive. When equitable relief is sought, not to enforce an executory obligation arising out of an illegal transaction, but to protect a status of legal ownership, wrongs done by Jacob Landau to creditors in respect of the property at some time prior to the acquisition of the title now in issue may not now be raised by this defendant to defeat otherwise available relief.
The judgment of the Appellate Division should be reversed and that of the Supreme Court reinstated, without costs.