IRENE R. JANKE, Respondent, v WILLIAM F. JANKE, Appellant.

Fourth Department, April 23, 1975

*Vincent D. Cardone (Bernard Sax* of counsel), for appellant.

*Thielman & Lalime (Philip A. Thielman* of counsel), for respondent.

GOLDMAN, J. Defendant-appellant, divorced husband of plaintiff-respondent, appeals from a judgment granted the wife in the sum of $37,393.52, which the trial court found to be the value of a one-half interest in a restaurant-tavern business. The court also found that the wife had a one-half interest in the real property in which the business was housed, which the parties stipulated had a value of $15,000. No appeal has been taken from this part of the judgment.

In 1957 the parties purchased the real property and the restaurant-tavern business as a joint venture with another couple named Tomak. Each couple invested $7,000 and the

title to the real property was taken in their four names. Both Jankes signed the note given to the bank from which they borrowed the $7,000 for their share of the purchase price. After some renovation a restaurant business was opened under the assumed name of Ship & Shore Restaurant. The two men applied for a liquor license which was issued in their names in 1959. At about that time the Jankes purchased the interest of the Tomaks and they continued the operation of the business. Respondent wife testified that although the liquor license was in the husband's name alone it was the intention of the parties "to operate the tavern as a husband and wife operation." The husband testified that in purchasing the business he "was looking for a future for both of us".

From the beginning of the business until 1968 the husband had another full-time job which prevented him from coming to the business premises until some time after 5:00 P.M. When the business first began the wife worked therein full time, starting with the opening of the restaurant in the morning. She testified that she spent 10 hours per day, six days per week conducting the business. Her duties consisted of cooking, cleaning, lighting the fires, waiting on tables, tending bar, maintaining the property inside and out, ordering supplies, doing the banking, keeping books and acting as general manager of the establishment. Except for such assistance as the husband rendered after his outside working hours, the wife worked alone until about 1965 when a woman was employed to assist her. Despite the husband's claim that this woman did much of the work which the wife testified she had performed, this employee was not called as a witness to support the husband's testimony. Repairs of the premises and payments on the mortgage were made from the business proceeds. A part of the husband's salary, which in the early years of the enterprise was $60 a week, was contributed to the business, as was a $4,000 inheritance which the wife had received. The family needs, such as food, clothing, automobiles and other necessaries, were paid for from the business proceeds. Both parties jointly signed all tax returns until their separation in 1969, but the business was held solely in the husband's name.

Although the trial court in determining to award one half of the interest in the business to the wife did not use the term "constructive trust", this must have been the principle on which it made its award. A constructive trust will be imposed where one party holding title to property is under an equita-

ble duty to convey it to another (5 Scott, Trusts [3d ed.], § 462). In order to establish a constructive trust there must be (1) a promise—express or implied; (2) a transfer of property in reliance thereon; (3) a confidential relationship and (4) unjust enrichment *(Foreman v Foreman,* 251 NY 237, 240; *Sinclair v Purdy,* 235 NY 245, 253). Although not directly expressed in language, the facts in the record indicate that all of these elements are present in the instant case. A constructive trust may be imposed where property has been parted with on the faith of an oral promise (see *Matter of Wells,* 36 AD2d 471, 474, affd. 29 NY2d 931) and here the entire relationship and the actions and contributions made by both parties were instinct with a mutual promise of a joint endeavor for the benefit of both. An express promise is not required; it may be implied. As Judge CARDOZO observed "though a promise in words was lacking, the whole transaction, it might be found, was 'instinct with an obligation' imperfectly expressed" *(Sinclair v Purdy,* 235 NY 245, 254, *supra).* The understanding of the parties should be interpreted not literally and irrespective of its setting but sensibly and broadly with all its reasonable implications.

Consistent with the theory that husband and wife were both to share in the benefits of this business is the husband's position that they were to share equally in the liabilities. It is undisputed in the record that the husband expected that the wife would sign the business income tax returns and she signed them for every year during the marriage. After they separated and when advised that there was an income tax liability due and owing, the husband stated to the wife that she should sign the return because he believed that she was liable for half of it. However, not only did the plaintiff wife contribute her full time services for a period of 12 years to the business, but she also contributed a $4,000 cash inheritance. It is this contribution of money and services by the wife which distinguishes the case at bar from *Fischer v Wirth* (38 AD2d 611) upon which appellant relies. In *Fischer* there was no business partnership and the wife in no manner contributed services or in any way assisted the husband in his work, which was the sole source of the assets in which the wife sought to share. The husband was the provider and the wife performed the usual duties of managing the household.

The absence of any express promise formalizing the venture grows out of the very confidence and trust implicit in the

marriage relationship. It would be unnatural for a husband and wife to reduce their understanding to writing. Certainly it is difficult to conceive of a more confidential relationship than that of husband and wife. "The exaction of such a promise, in view of the relation, might well have seemed to be superfluous" *(Sinclair v Purdy, supra,* p 254). As was stated in *Goldsmith v Goldsmith* (145 NY 313, 318) "The absence of a formal writing grew out of that very confidence and trust, and was occasioned by it". (Also, see, 1 Scott, Trusts [3d ed], § 44.2; 5 Scott, Trusts [3d ed], §§ 440, 462.2.) Dean Pound has written of the use of the constructive trust as affording "specific restitution of a received benefit in order to prevent unjust enrichment". He has pointed out that the constructive trust, unlike the express trust, is remedial and not a substantive doctrine. (Pound, The Progress of the Law, 33 Harv L Rev 420, 421.)

To permit the husband to retain for himself all of the business assets to which each contributed and which each rightfully expected to share would constitute unjust enrichment of the defendant husband at the plaintiff wife's expense. This would be wrong as a matter of conscience. Judge CARDOZO stated the principle succinctly in *Beatty v Guggenheim Exploration Co.* (225 NY 380, 386) that "a constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee *(Moore v Crawford,* 130 US 122, 128; Pomeroy Eq. Jur. sec. 1053)." Equity out of a sense of fairness and obligation converts the husband into a trustee to prevent or redress a wrong.

A more troublesome issue, one not raised by the parties, appears in the record. That is plaintiff's unclean hands in participating in a business enterprise which requires securing of a liquor license without notifying the Liquor Authority of her interest in it. This was in violation of sections 100 and 110 of the Alcoholic Beverage Control Law. It is a recognized principle that where a party must trace her cause of action to an illegal transaction there can be no recovery. *(O'Mara v Dentinger,* 271 App Div 22, 32.) Although neither party raised the issue of unclean hands or illegality as a defense to plaintiff's action for a declaration of her one-half interest in this tavern business, this court is not precluded from raising the issue *sua sponte* for the first time on appeal *(O'Mara v*

*Dentinger, supra,* p 33) not to favor defendant, but as a matter of public policy *(Richards v Levy,* 40 AD2d 1055). It has been held that one who has failed to register his name with the State Liquor Authority in obtaining a license, thereby violating the Alcoholic Beverage Control Law, cannot invoke the power of the equity court to impose a constructive trust on his share of the proceeds of that business being conducted in violation of statute. *(O'Connor v O'Connor,* 263 App Div 820, affd 288 NY 579; *Carmine v Murphy,* 285 NY 413; *Falcone v Falcone,* 31 Misc 2d 740, revd. on other grounds 18 AD2d 1127.)

In *O'Connor v O'Connor (supra)* plaintiff purchased a business solely with his funds and ran it himself but put the liquor license in his wife's name. When his wife thereafter excluded him from the business the courts refused to grant him equitable relief because of the illegality of the transaction which served as the basis for his claim. The other cases cited above have reached the same result in analogous circumstances. A distinction may be made, however, and a party afforded relief, if the complaining party was less culpable in the illegal transaction, or was taken advantage of by nature of the relationship that existed with the defendant. *(Palumbo v Palumbo,* 55 Misc 2d 264; *Miseveth v Pribishuk,* 85 NYS2d 595; cf. *O'Mara v Dentinger, supra,* p 33.) The mere existence of a husband-wife relationship, nevertheless, will not warrant a finding of overreaching or undue influence *(Sorrentino v Sorrentino,* 75 NYS2d 813, affd 272 App Div 1067; *Furman v Furman,* 17 NYS2d 907, affd 259 App Div 988, app dsmd 284 NY 591). Nor can plaintiff claim to be completely innocent of wrongdoing, since she acknowledged that defendant indicated to her that he kept her name off the license to "save it" if needed in the future. However, the facts indicate that plaintiff merely acceded to defendant's wishes, perhaps because of her lack of knowledge of these matters or in the interest of family harmony. She did not actively instigate or abet the fraud on the Liquor Authority.

Since defendant has not raised this issue, after balancing the equities involved herein, as a court of equity will do *(Towner v Berg,* 5 AD2d 481, 486–487), we do not believe that the unclean hands doctrine should be invoked to defeat plaintiff's claim. Even where an illegal transaction forms part of the basis of an action, the courts will sever the legal from the illegal aspects where possible to afford relief *(Steinlauf v*

*Delano Arms,* 15 AD2d 964; *Rosenblum v Frankel,* 279 App Div 66). Here, the theory of plaintiff's suit rests on the whole nature of the restaurant business acquired two years before a liquor license was obtained. The license, though of economic value to the business, is not of itself the basis of plaintiff's claim. Certainly, illegality does not taint the entire enterprise so as to deprive plaintiff totally of her claim. (See *Falcone v Falcone,* 31 Misc 2d 740, 744, *supra.)* "Equity is not an avenger at large". *(Seagirt Realty Corp. v Chazanof,* 13 NY2d 282, 286.) Where the illegal transactions can be separated from plaintiff's claim, the unclean hands doctrine should not be invoked to defeat a constructive trust *(Seagirt, supra,* pp 285, 287).

Although the trial court as fact finder is permitted to weigh the evidence and make conclusions as to the valuation of the business (McCormick, Damages, pp 54, 68), we find that the court adopted the wrong method for computation of plaintiff's award.

The only witness to the value of the business was an accountant who gave three methods of appraisal. These are (1) ten times the net earnings which would yield a figure of $55,000 based upon a $5,500 profit figure in the 1969 tax return for the business; (2) gross receipts which were $71,585.53 in the 1969 return and (3) two times gross profit, yielding a figure of $74,787.04. The 1969 figure was used as the most representative of the five years considered by the accountant because it was in that year that the plaintiff left the business and also the year in which the Internal Revenue Service audited the tax return. The gross receipts for that year were $71,584.53 and the gross earnings were $37,393.52. It should be noted that the tax returns for other years showed losses of from $393 in 1968 to $6,544.15 in 1972 and the only year showing a profit other than 1969, was 1971 when the profit reported was $2,271.52. The court adopted the two times gross profit method and awarded one half of that or $37,393.52 to the plaintiff wife. Although the accountant gave the three possible methods of valuation, he stated that the method he would "most prefer to use was ten times earnings." In light of the poor profit history of the business we agree with the accountant's opinion that method (1) would be the fairest and most realistic measure of value of "this particular business". The earnings or profit figure for 1969 was $5,500. Ten times these net earnings would make the value of the business

$55,000. One half of this is $27,500 and we, therefore, reduce the award to the plaintiff to that amount.

The judgment should be modified by reducing the amount of the judgment to $27,500 and as so modified affirmed.

SIMONS, J. (dissenting). In my judgment the evidence in this record cannot be strained to fit it within established equitable rules permitting plaintiff the relief granted her by this decision. In effect the majority have formulated a community property rule for this plaintiff and it is a community property rule with a vengeance, for she has received not only a half interest in her husband's property but alimony also by virtue of a prior divorce decree. If such a rule is to be adopted, it should be done by the Legislature and not by court decision.

By this action plaintiff sought a division of jointly owned real property and to recover a "past amount of the profits, salaries and other monies due" her to compensate for her efforts in defendant's tavern business. Neither in her pleading nor her testimony did she claim ownership of the tavern business. Notwithstanding her prayer for relief, the trial court and the majority, in addition to apportioning the value of the real estate, have created a constructive trust and awarded plaintiff one half of the value of defendant's business.

To merit such relief plaintiff must prove that because of a confidential relationship she parted with property relying upon a promise of her husband, which promise was later breached by him and resulted in his unjust enrichment (*Foreman v Foreman,* 251 NY 237, 240; *Sinclair v Purdy,* 235 NY 245, 253; *Fischer v Wirth,* 38 AD2d 611; *Matter of Wells,* 36 AD2d 471, 474, affd 29 NY2d 931). I find none of these elements established in the record other than the confidential relationship of husband and wife.

There was no express promise between the parties in this case, and none is claimed. While a promise may be implied, the marriage alone is not sufficient to support such an inference. In this State each spouse has the right to own and control his or her property and in these days of governmental regulation and sophisticated taxation there are many legitimate reasons for married persons to do so. True enough, the husband and wife relationship is a partnership in the broadest sense of the word but if it is to be also a business partnership or a joint business venture in which each spouse equally participates both as to profits and losses, this should appear by

something more than the flimsy evidence in this record. Many husbands volunteer business advice and heavy labor to their wives in the operation of a wife's separately owned business, just as wives similarly situated to this plaintiff help out from time to time in their husbands' offices or businesses. These things are done routinely in marriage and without any expectation of remuneration or an ownership interest in the spouses' business. The law in New York has not reached the point at which a spouse may hold that there is a presumption of agreement to share equally all assets accumulated or earned during the marriage. If such consequences are to follow, there must be evidence of promise on the part of the husband, if the property is in his name only, that it is being held for the benefit of both parties (see *Fischer v Wirth, supra; Matter of Wells, supra;* see, also, *Vassel v Vassel,* 40 AD2d 713, affd 33 NY2d 533; *Ehalt v Ehalt,* 38 AD2d 839).

Where, then, is the evidence of a promise in this case? Certainly not when the business was conveyed to defendant and his partner Tomak in 1957 or to the husband alone two years later. During that time plaintiff was familiar with all aspects of the business and participated in it with full knowledge of the ownership and licensing arrangements. The parties accepted an arrangement by which the real property was held in joint names and the business was in the defendant's name. To plaintiff's knowledge all the business certificates, liquor licenses and waterway permits contained only his name. There is not the slightest evidence of any fraud, concealment or overreaching by defendant and for 12 years plaintiff made no protest or claim that she owned any part of this business. That claim came after the divorce.

The only evidence of a promise by the husband which the majority refer to is found in two statements. The first is a quotation of defendant which was nothing more than a generalized response on cross-examination. He expressed his desire as a man employed in a company which had no pension plan to retire to his personally owned business to support his family. This commonly held desire is not indicative of a promise of shared ownership. The other quote, plaintiff's statement that the parties operated the business jointly, similarly does not support an inference of joint ownership for two reasons: first, the joint operation occurred at a time when the business was in defendant's name alone and preceded any financial contributions by plaintiff, and second, because the

work in the business by plaintiff was not referable to a promise by defendant that she would thereby acquire an interest in the property (see *Matter of Wells, supra,* p 474). The efforts which plaintiff contributed to the operation were not induced by an abuse of the husband and wife relationship (see *Ahrens v Jones,* 169 NY 555; *Fischer v Wirth, supra).* Finally, the majority rely upon the transfer of plaintiff's $4,000 inheritance in 1967 but she did not claim any promise by her husband induced that transfer.

More importantly, however, it is not clear from the evidence that plaintiff transferred these funds to defendant's business. Plaintiff testified that the $4,000 went into the business "one way or another" but she later particularized this by saying that of this sum $3,000 was used for a parking lot and the rest for "major things that had to be done that required more than fifty dollars." Thus, the credible evidence is that the money was an investment in the real property for which she was fully compensated by the judgment in her first cause of action. At best, the use of $1,000 of this inheritance may be in doubt but plaintiff's failure to explain the use of her money should not be parlayed into an award of $27,500 for the business in addition to the $15,000 in apportioned value of the real estate.

This was a marginal business, at best. In the early years it showed receipts which were so negligible that they hardly justified the effort. The business gradually improved but even during the seven years from 1966–1972 it showed a profit only in the years 1969 and 1971. In the early years both parties worked at the tavern, and before defendant's heart attack and retirement in 1967 the debts of the business were frequently paid with funds from his outside employment. Notwithstanding the recitals in the majority opinion, plaintiff's input of time and effort after 1964 is a matter of considerable doubt. Her husband, her daughter and her son-in-law described her efforts as something less than those of a key operator in the organization and at that time a full-time employee was hired to be responsible for the business during the day when defendant was working. As for plaintiff's sharing of the liabilities, I am not aware that signing a form 1040 joint tax return constituted an assumption of business liability by the wife.

Throughout the operation of this tavern plaintiff used business receipts and tips for her own purposes and she periodically purchased a new car in her own name with business funds. The conclusion is inescapable that plaintiff has been

more than repaid for whatever money and effort she put into the business or the real estate, that her work was compensated for in precisely the manner contemplated by the parties and without any unjust enrichment of defendant.

It hardly seems necessary to comment upon the issue of unclean hands. By confirming plaintiff's claim of ownership the court establishes that she was a party to the misrepresentations to the State Liquor Authority. That fact alone should be enough to prevent equitable relief (see *O'Connor v O'Connor,* 263 App Div 820, affd 288 NY 579; and see *Carmine v Murphy,* 285 NY 413 and *Towner v Berg,* 5 AD2d 481, 487).

I would reverse the judgment insofar as appealed from and dismiss the complaint.

CARDAMONE, J. P., and MAHONEY, J., concur with GOLDMAN, J.; SIMONS and WITMER, JJ., dissent and vote to reverse the judgment and dismiss complaint in an opinion by SIMONS, J.

Judgment modified in accordance with opinion by GOLDMAN, J., and as modified affirmed without costs.