Sandra J. Zuch, Appellant, v Eugene Zuch, Respondent.
First Department, June 5, 1986

### APPEARANCES OF COUNSEL

*Barry N. Berger* for appellant.

*Helene Brezinsky* of counsel *(Marguerite Sullivan* with her on the brief; *Rosenman Colin Freund Lewis & Cohen,* attorneys), for respondent.

### OPINION OF THE COURT

KASSAL, J.

The parties were married on September 27, 1975, when plaintiff was 28 and defendant 49 years of age. He was a partner and officer in the securities firm of Drexel Burnham & Co., where plaintiff had been employed as an administrative assistant until she became defendant's personal secretary. Prior to their marriage, they had lived together for three years after defendant had left his first wife and teen-age son in the summer of 1972. In September 1972, they took up residence in a two-bedroom apartment on York Avenue, which was furnished and decorated by plaintiff. After defendant's

wife commenced an action for separation in 1973, there was a separation judgment, followed by a conversion divorce one year later.

At the time of their marriage in 1975, defendant, as a senior vice-president and member of the board of directors of Drexel Burnham, earned in excess of $260,000. Prior to marriage, they had discussed the purchase of a cooperative apartment since the three-year lease on the York Avenue apartment would terminate in September 1975. After inspecting several apartments, they decided to purchase a cooperative apartment, 15E, at 50 East 79th Street for $57,500. Plaintiff's mother, who lived in Syracuse, gave her $30,000, which was applied toward the purchase price, with defendant paying the balance.

She claims that defendant advised her that the cooperative board of directors would not approve the purchase in her name or in their joint names since they were not married but it would approve a purchase in defendant Eugene's name. He told her that the shares could be subsequently transferred to her. Defendant denied this, claiming that he had sufficient securities and savings to pay the entire purchase price and that the $30,000 from plaintiff was a loan. Only Eugene signed the contract of sale, dated June 20, 1975, and he made the down payment out of his own funds. While he asserts that the original closing date had been scheduled for July 1975 and subsequently adjourned, the contract provides that closing of title be on October 15, 1975. In any event, the closing took place on the latter date, and they moved in and established their marital residence in the apartment. They had been married in September.

Plaintiff supervised the alterations, improvements and decoration of the apartment, contributing $10,100 for that purpose, slightly less than 50% of the total $22,000 expended. Thus, at that point, her total contribution was $40,100, from her mother's money, the liquidation of her stock and practically all her life's savings. Because of her preoccupation with the extensive alterations, she did not discuss the transfer of the cooperative shares until 1977, when defendant began to experience financial difficulties. He lost his "desk" positions with the brokerage firm and his commission income declined to $136,000 in 1977, $56,000 in 1978, $54,000 in 1979 and $61,000 in 1980, his last year at Drexel Burnham. He contends that he left the firm only at plaintiff's insistence that he could earn far greater sums on his own, which sums were

necessary to maintain her in the lavish style to which she had become accustomed. He attributes his subsequent failure to the pressure which she thus created and her withholding of sexual relations. At the time of trial, he was unemployed.

Despite defendant's claim that plaintiff's original $30,000 contribution was a loan, which other witnesses also testified he told them, certain events in 1977 and 1978 clearly demonstrated that he did, in fact, intend to transfer the cooperative shares to the plaintiff. In July 1977, an action was brought by his first wife for alimony arrears. He advised plaintiff that it would be advisable to establish the existence of debts and he would claim that plaintiff's contribution toward the purchase and renovation of the apartment was a personal loan to him. He expressly so testified at a hearing before a Special Referee on May 22, 1978 and, in response to a question by his attorney, he stated that he planned to transfer ownership to plaintiff. At the trial of this action, defendant claimed that any such transfer was to be temporary, until the arrears in alimony had been paid, and that his prime concern was to keep the apartment beyond the reach of his first wife.

In June 1978, a settlement of the arrears was arrived at but his former wife's attorney conditioned it upon the cooperative stock being held in escrow until the balance had been paid. Since this would further delay transfer of title, the settlement was altered to permit Eugene to transfer title to plaintiff Sandra, who stipulated she would not convey the apartment until the $9,000 alimony arrears had been paid. Thereafter, in August 1978, Eugene's attorney told him that if he wished to transfer ownership to Sandra, he should do so "immediately".

On September 26, 1978, Eugene sent a letter to the building's managing agent, referring to a prior telephone conversation, and requesting that all the shares of stock in the cooperative apartment be assigned to Sandra. The cooperative responded on October 23, 1978, forwarded documents to be executed and advised that the board of directors had approved the transfer. However, defendant failed to execute the documents and title was never conveyed. He admits that he sent the letter but contends that this was part of his over-all plan to protect Sandra from his first wife. He has paid all maintenance charges on the apartment, which, he claims, totaled almost $200,000.

In May 1982, this action for divorce was commenced. The plaintiff also sought equitable distribution of the cooperative

shares (then valued at $600,000-$650,000) in the same percentage as the parties' contributions toward the purchase price; in such event, plaintiff would waive her claim for maintenance. The second cause of action sought imposition of a constructive trust on these shares of stock to protect the interests of the parties.

After a 31-day Bench trial, the court awarded both parties a mutual divorce. The judgment also distributed the marital assets, and, insofar as relevant on this appeal, declared the apartment shares to be Eugene's sole and exclusive property with a finding that Sandra's contribution of $40,100 was a loan, which had to be repaid. Additionally, the court dismissed the cause of action for a constructive trust as barred by the six-year Statute of Limitations (CPLR 213 [1]). In doing so, it found plaintiff's claim had accrued on the closing of title in October 1975, and that defendant's letter in September 1978 to the managing agent, requesting a transfer of ownership, did not toll the limitations period; nor was it an acknowledgment of a debt to plaintiff under General Obligations Law § 17-101.

On almost every issue bearing on credibility, the trial court found in favor of defendant. Thus, in spite of undisputed documentary proof that the contract of sale contained a provision scheduling the closing of title for October 1975, after the marriage, it, nevertheless, held that Eugene had contracted to purchase the apartment, with an original closing date prior to the marriage, which was adjourned as a result of the illness of the seller's husband. In so ruling, the court gave undue weight to an unsigned contract with a closing date of July 1975, in lieu of the executed contract which clearly fixed the closing date, when closing actually occurred, after their marriage.

The court found plaintiff's contribution to be "an unsolicited loan," and, in spite of the contradictory evidence consisting of defendant's testimony before the Referee and his letter to the managing agent, it held that defendant did not intend to transfer the shares to the plaintiff. In doing so, the Trial Justice concluded that defendant "had managed to escape from his first marriage at the cost of losing his home in Westchester and obviously, he had no wish to become a two-time loser again."

While the court referred to the husband's extravagance in terms of gifts to the wife of jewelry and furs, the record shows that such expenditures were modest and relatively limited,

consisting of $2,800 for jewelry, $900 for one fur and $5,000 for an engagement ring, which was claimed to be worth $11,000. Plaintiff was denied maintenance, with the court noting that plaintiff did not seek such relief, although her waiver of maintenance was conditioned upon an equitable distribution of the apartment. The court also denied her counsel fees, citing defendant's unemployment and plaintiff's employment at a salary of $17,000 per year. The Trial Justice further observed that the direction to defendant to repay the loan, with interest, as well as the value of "all of the jewelry" purchased by defendant out of his separate property, would afford plaintiff sufficient funds to pay her attorney.

On review of the record, we find the trial court erred in failing to direct an equitable distribution of these cooperative shares, which, having been acquired during the marriage and, in significant part, with contributions from plaintiff, was marital property (Domestic Relations Law § 236 [B] [5] [d] [6]).

This conclusion is supported by the overwhelming weight of the evidence. It is clear that the parties intended this apartment, acquired after marriage, to be their marital residence, which it was. The mere fact that defendant entered into the contract prior to the marriage is not dispositive. Plaintiff contributed more than half the purchase price and, subsequently, almost 50% of the cost of renovating and decorating the apartment. While Eugene claims that Sandra's contribution was only a loan and the Trial Justice so found, this is not supported by the preponderance of the credible evidence, especially Eugene's admissions that he intended to transfer the shares to Sandra, through his testimony before the Special Referee in his former wife's action for maintenance arrears, and his unequivocal letter to the managing agent. Sandra also testified that defendant repeatedly promised her that the shares would be transferred to her and it was not until January 1982 that Eugene told her that there would be no transfer since he had received legal advice to assert that her contributions constituted an "interest free loan".

### "CATCH-ALL" FACTOR

In denying plaintiff any equitable share in the apartment, the trial court failed to take into account all the statutory factors to be considered in determining an equitable distribution of marital property under Domestic Relations Law § 236 (B) (5) (d) (1)-(10). Specifically, the court overlooked the critical

consideration of essential fairness and equity, which is incorporated as part of the "catch-all" factor in section 236 (B) (5) (d) (10), enumerated with the other factors in the statute *(see, Cappiello v Cappiello,* 110 AD2d 608, 609, *affd* 66 NY2d 107).

Although the parties had been married for nine years and, previous to that, had lived together for another three years, Trial Term incredibly found this to be a marriage of "brief duration". At the time of the marriage, defendant was in a secure financial position, with high earnings from his securities brokerage firm and, although unemployed at the time of this trial, the plaintiff claimed that this was planned, to thwart a large matrimonial award to her. Nor does the record support the conclusion that he had been "extravagantly generous with plaintiff in bestowing upon her gifts of jewelry and furs", especially in light of his high earnings at the time. While plaintiff waived any claim for maintenance, in exchange for an equitable share of the cooperative apartment (Domestic Relations Law § 236 [B] [5] [d] [5]), the trial court mistakenly determined that maintenance had been waived outright.

Under all the circumstances, Trial Term should have directed an equitable distribution of this important martial asset, the apartment shares, in proportion to the original contributions of each party toward the purchase price *(cf. Cunningham v Cunningham,* 105 AD2d 997; *Duffy v Duffy,* 94 AD2d 711). Its determination, that this was Eugene's separate property, was inequitable, contrary to the evidence and resulted in the imposition of an unwarranted penalty upon the wife. As we observed in *Cappiello (supra,* at p 609): "Equitable distribution, as a remedy in marital actions, is not designed either to result in a penalty or a windfall * * * the determination in each case must be individual, based upon the circumstances presented and the considerations of fairness and equity in terms of the several factors enumerated in Domestic Relations Law § 236 (B)."

### CONSTRUCTIVE TRUST

We also disagree with Trial Term's refusal to impress a constructive trust of this asset, based upon its decision that the six-year Statute of Limitations in CPLR 213 (1), which the court concluded ran from the date of the closing, had expired. To impose a constructive trust, the following factors must be shown: (1) a confidential or fiduciary relationship, (2) a prom-

ise, (3) a transfer in reliance thereon, (4) a breach of the promise and (5) unjust enrichment. *(Sharp v Kosmalski,* 40 NY2d 119, 121; *Scivoletti v Marsala,* 97 AD2d 401, 402, *affd* 61 NY2d 806; *Janke v Janke,* 47 AD2d 445, *affd* 39 NY2d 786.)

Clearly, the marital relationship sufficed to establish the necessary confidential relationship *(Janke v Janke, supra,* at p 449). In view of our present holding as to what would be equitable, in terms of the distribution of marital assets, a constructive trust must be imposed to protect the enforcement of the respective rights and interests of the parties, especially where, as here, there has been a history of extensive conflict and hostility between the parties, with the cooperative stock held in the name of one party, who is presently the only occupant of the apartment.

Moreover, bearing in mind that each party did contribute toward the purchase of the apartment after the marriage—marital property under the statute—and taking into account Eugene's numerous statements regarding the transfer of ownership to the wife, permitting him to retain the cooperative shares, to the exclusion of the plaintiff, would unjustly enrich him at her expense. In the circumstances here, we fail to perceive the basis for the trial court's conclusion that there was no unjust enrichment. As was aptly observed in *Janke v Janke* (47 AD2d, at p 449): "To permit the husband to retain for himself all of the business assets to which each contributed and which each rightfully expected to share would constitute unjust enrichment of the defendant husband at the plaintiff wife's expense. This would be wrong as a matter of conscience. Judge CARDOZO stated the principle succinctly in *Beatty v Guggenheim Exploration Co.* (225 NY 380, 386) that 'a constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee *(Moore v Crawford,* 130 US 122, 128; Pomeroy Eq. Jur. sec. 1053).' Equity out of a sense of fairness and obligation converts the husband into a trustee to prevent or redress a wrong."

We also disagree with the trial court's determination that it was necessary for the wife to seek to impress a constructive trust within six years after the parties acquired the marital residence. Such a holding would require a spouse to take affirmative action to preserve claims to potential marital assets even before there had been any hint of marital discord.

That flies in the face of logic and would be against public policy.

Taking into account the nature of the marital relationship and the trust and confidence flowing therefrom, we fail, in these circumstances, to perceive how a marital partner could be expected to proceed against the other to impress a trust, measured from the date the property was acquired, in order to avoid the risk of being barred by Statute of Limitations. This would be an intolerable result, especially as to marriages of long duration, where marital property had been acquired and placed in the name of one spouse. This would critically undermine the underlying purpose of the equitable distribution statute and the vitality of marriages generally. Inasmuch as we have now determined that there should be an equitable distribution of this asset, a constructive trust is essential to protect the interests of the plaintiff, who has neither title to nor possession of the apartment.

In any event, the several statements by the defendant, before the Referee at the hearing and, in conjunction with the stipulation of settlement in the action for arrears by his former wife, that he intended to transfer title to plaintiff, as well as the September 1978 letter to the managing agent, requesting that ownership be transferred to her, would amount to an acknowledgment sufficient to toll the statute under General Obligations Law § 17-101. Moreover, these several promises, their relationship as husband and wife during that time, as well as the 1978 letter to the managing agent, would all be sufficient to estop defendant from raising Statute of Limitations as a defense (General Obligations Law § 17-103; *Robinson v City of New York*, 24 AD2d 260, 263; *cf. Schirano v Paggioli*, 99 AD2d 802).

We have considered plaintiff-appellant's remaining arguments and find them lacking in merit. In light of our determination with respect to equitable distribution and the imposition of a constructive trust, the issue of maintenance is rendered academic, plaintiff having waived that marital relief. Further, the record supports so much of the judgment which awarded each party a divorce for cruel and inhuman treatment.

Accordingly, the judgment, Supreme Court, New York County (Bruce McM. Wright, J.), entered September 17, 1984, which, following a trial, *inter alia,* (1) granted both parties a divorce based upon cruel and inhuman treatment, (2) declared

the marital cooperative apartment to be the sole and exclusive property of the defendant, thus denying plaintiff's request for equitable distribution of the cooperative shares, (3) dismissed the second cause of action in the complaint to impress a constructive trust on the cooperative stock and, (4) denied plaintiff any maintenance or counsel fees, should be modified, on the law and the facts, to the extent of vacating and deleting from the judgment the third through ninth and the eleventh decretal paragraphs, relating to the denial of equitable distribution of the shares in the cooperative apartment and the dismissal of the second cause of action and, in place thereof, declaring and adjudging the shares in the cooperative apartment to be marital property, subject to equitable distribution, to be distributed 52.174% to plaintiff and 47.826% to defendant; directing that a constructive trust be declared and imposed in favor of the plaintiff on the shares for the cooperative apartment No. 15E, located at 50 East 79th Street, New York, New York, as prayed for in the second cause of action; and, otherwise affirmed, without costs or disbursements.

KUPFERMAN, J. P., SANDLER, FEIN and WALLACH, JJ., concur.

Judgment, Supreme Court, New York County, entered on September 17, 1984, unanimously modified, on the law and the facts, to the extent of vacating and deleting from the judgment the third through ninth and the eleventh decretal paragraphs, relating to the denial of equitable distribution of the shares in the cooperative apartment and the dismissal of the second cause of action and, in place thereof, declaring and adjudging the shares in the cooperative apartment to be marital property, subject to equitable distribution, to be distributed 52.174% to plaintiff and 47.826% to defendant; directing that a constructive trust be declared and imposed in favor of the plaintiff on the shares for the cooperative apartment No. 15E, located at 50 East 79th Street, New York, New York, as prayed for in the second cause of action; and otherwise affirmed, without costs and without disbursements.