**WALTER E. PREISS, Plaintiff/Appellant and Cross-Appellee**

**v.**

**R. D. SEVERE and BAKER'S, INC., Defendant/Appellee and Cross-Appellant**

D.C. Civil No. 1985/278

Terr. Court No. 1985/380

District Court of the Virgin Islands

Div. of St. Croix

Appellate Division

November 13, 1986

KEVIN A. RAMES, ESQ., St. Croix, V.I., *for plaintiff/appellant*

GEORGE H. LOGAN, ESQ., St. Croix, V.I., *for defendant/appellee*

CHRISTIAN, *Presiding Judge*, O'BRIEN, *District Judge* and MEYERS, *Territorial Court Judge*

## OPINION OF THE COURT

This appeal requires us to determine whether, in the circumstances of this case and its posture on appeal, the defense of in pari delicto requires reversal of the territorial court. We hold that the defense is inapplicable and we will affirm the judgment of the territorial court.

## I. FACTS

In November 1984, Walter E. Preiss, the appellant/cross-appellee, sold his juice distributorship to R. D. Severe and Baker's, Inc., the appellee/cross-appellant. The purchase price was $191,010.90, of which Severe paid $75,000 at the closing and issued two notes in Preiss' favor covering the balance. Almost immediately,

434

Severe defaulted on the notes and Preiss filed the debt action herein in March 1985. Severe counterclaimed, alleging that Preiss had fraudulently misrepresented the income of the distributorship by assuring him that a brisk business had been conducted off-the-books.

The territorial court dismissed the Preiss debt action and held that Preiss had defrauded Severe. It awarded him $38,283.80 in compensatory and punitive damages. Preiss now appeals the finding of fraud and the propriety of the punitive damages. In the cross-appeal, Severe argues that the court undervalued the compensatory award. The judgment is amply supported by the record and will, therefore, be affirmed in all respects. We write only in response to our dissenting colleague's opinion that Severe was barred under the doctrine of in pari delicto from asserting fraud. We granted the parties leave to brief this issue.

## II. DISCUSSION

As an initial matter, we must correct Preiss' post-argument statement that estoppel was pled as an affirmative defense to Severe's counterclaim for fraud. Such a defense was not asserted, either at trial or on appeal. The applicability of in pari delicto was raised for the first time by a member of this panel during oral argument. Rule 8(c) of the Federal Rules of Civil Procedure, however, required Preiss to raise all affirmative defenses, at the latest, during trial or else waive them. E.g., Systems Incorporated v. Bridge Electronics Co., 335 F.2d 465, 466 (3d Cir. 1964). And as a general rule of appellate procedure, issues raised for the first time on appeal should be rejected summarily. E.g., Singleton v. Wulff, 428 U.S. 106, 120–21 (1976). We perceive no reason to deviate from this established practice here and hold that Preiss waived the estoppel defense. We proceed to discuss its merits only to explain the basis for our disagreement with the dissent.

In pari delicto, like its equitable companion principle of unclean hands, is a common law doctrine designed to prevent profit from one's wrongful acts. Literally, in pari delicto means "in equal fault" and thus, it is not surprising that the bedrock requirement of this circuit, and the classic rule of the common law, is that the guilt of the party asserting fraud must be "substantially equal to that of the defendant." Tarasi v. Pittsburgh National Bank, 555 F.2d 1152, 1156–59, 1161 (3d Cir.), cert. denied, 434 U.S. 969 (1977).

Eichler v. Berner, 105 S.Ct. 2622, 2626-27 (1985); Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 147 (1968) (Fortas, J., concurring); Mallis v. Bankers Trust Co., 615 F.2d 68, 94-97 (2d Cir. 1980), cert. denied, 449 U.S. 1123 (1981); Collins v. PBW Stock Exchange, Inc., 408 F. Supp. 1344, 1349 (E.D. Pa. 1976).

The Third Circuit defined the in pari delicto defense in the widely-cited Tarasi case:

> In pari delicto, which literally means "of equal fault," is one of the common law doctrines fashioned to assure that transgressors will not be allowed to profit from their own wrongdoing. Under this construct, a party is barred from recovering damages if his losses are substantially caused by "activities the law forbade him to engage in."
>
> The rule has developed many complexities and has been applied where plaintiffs have had only a minimal association with the allegedly unlawful acts. However, when in pari delicto is given a narrow interpretation, the scrutiny of the relative moral worth of litigants that it allows is a limited one. Only in those cases where it can fairly be said that the plaintiffs' fault is substantially equal to that of the defendant will recovery be precluded. Moreover, a court may look only to conduct associated with the transaction before it, and may not forbid recovery on account of a plaintiff's activities in a separate setting.

555 F.2d at 1156-57 (footnotes omitted).

Tarasi presents a classic example of equal guilt: a tippee claiming fraud against the tipper who supplied inaccurate insider securities information. The court allowed the defendant to invoke in pari delicto because by acting on the tip, the plaintiff violated the same statute as did the defendant and this, in turn, posed the same threat to the stability of the stock market.

The in pari delicto defense is inapplicable here because the parties' guilt is not equal. Severe's requisite culpability consists of an allegation that he bought Preiss' business with the intent to commit tax fraud. Purportedly, this intent can be inferred from Severe's direct testimony:

> Q Sir, did you hire an accountant to review the books or anything of the records of the company?
>
> A No, I did not.

436

Q Why not?

A Well, Mr. Preiss had represented to me that the books were immaterial, that Baker's, Inc., was selling half a dozen trailer loads a year that were unreported to the government and he said that in order—

ATTORNEY RAMES: Your Honor, I object.

THE COURT: Overruled.

ATTORNEY CANNON: Go ahead.

THE WITNESS: And, in order to do this, that there could be no trace left of any information regarding those trailer loads or any product that was being sold under the table.

Q And, you believed that?

A Yes, I did.

Q Why did you believe that?

A Well, it's—in any business you run into, [there are] all kinds of people who will, you know, will use any method to produce a net profit. I said to Mr. Preiss at the time that that was fine that he was doing that, but it was immaterial to me. Because, what it would be saving was gross receipts taxes. Those gross receipts taxes would equal about $4,000 if the business was, in fact, netting $70,000 to $80,000 before taxes and doing six trailer loads, illegally. Then, it would be doing $70,000 to $75,000 if the taxes were reported.

(Tr. 154-55.)

■■ Tarasi makes clear that in pari delicto is applicable only where the plaintiff's illegal conduct occurred in the course of the transaction that is the basis of the fraud claim. 555 F.2d at 1157. The sole concurrent act of which Severe can be accused is formulating the intent to hide some business income. Presuming the truth of this charge, the Tarasi test is not met because a passing thought is not illegal conduct. And even if Severe's "act" could be deemed unlawful, guilt that is unproven and merely inferred cannot be "substantially" equated with the fraud actually perpetrated by Preiss. Tarasi, supra at 1157.

Hence we conclude that even if the in pari delicto defense had been raised in a timely manner, it is inapplicable here.

## III. CONCLUSION

The defense of in pari delicto may only be asserted against a party of comparable guilt. Moreover, as an affirmative defense, this issue must be raised, at the latest, during trial or else it is deemed waived.

CHRISTIAN, Presiding Judge, concurring in part, dissenting in part.

The majority today affirms the decision of the trial court in this cause. To the extent that such affirmance upholds the decision of the Territorial Court dismissing the complaint of appellant, I am in full agreement. However, insofar as affirmance sustains the Judgment of the court below on the counterclaim of appellee, I must respectively dissent for I am strongly of the view that a remand for further proceedings is warranted, if not indeed compelled.

My disagreement with the majority opinion is twofold. Firstly, I am of the opinion that there has been a failure to comply with the provisions of Rule 52(a) of the Federal Rules of Civil Procedure, and secondly, proceedings should be had before the trial court to determine whether or not the counterclaim should be dismissed because of illegality in which the contracting parties in this cause indulged.

### I.

Rule 52(a) in pertinent part provides "in all actions tried upon the facts without a jury, or with an advisory jury, the Court shall find the facts specially and state separately its conclusions of law thereon, . . ." Nowhere in the record before this Court is there entry of a conclusion of law by the Court that there was reasonable reliance by the appellee on the claimed misrepresentations of appellant, with findings of fact entered which would support such a conclusion. In this case, as it develops, such findings and conclusion are vital, for not only must there be reliance, but such reliance must be reasonable.

Consider briefly the most pertinent facts in this case. In attempting to persuade appellee to purchase his business (Baker's, Inc.) appellant represented that the business realized a net profit before taxes of $75,000 to $85,000 per annum, and that the volume of sales was two and one half trailer loads of juice per month. Evidently, to bolster the foregoing representations appellant showed appellee a financial statement for a ten month period

438

showing profits for that period of $24,236.25. If one strikes the average profit per month on the basis of that ten month showing, and because profit for each of the two additional months to complete a year would be $2,500.00, we add $5,000.00 to the ten month figure and end up with an annual profit of $29,236.25. Then, evidently, in order to explain the considerable difference between the $75,000.00 and $29,236.25, appellant in effect told appellee "not to worry", an additional six trailer loads are sold "under the table" and "off the books" resulting in an additional $30,000.00 in annual profits. Since, at most, appellant demonstrated a net profit of $60,000.00 rather than $75,000.00 to $85,000.00 per annum, findings of the trial court to support a conclusion of reasonable reliance become imperative.

The foregoing analysis raises the question of whether or not there was a duty on the part of appellee to investigate. For the trial court to conclude that because appellee lacked the experience and expertise of appellant, appellee was justified in accepting as true the representations of appellant, is not enough. Although the Restatement (Second) of Torts § 540 (1977) states, in substance, that a person in the position of appellee is justified in relying on representations made, even though had he investigated, the falsity would have been discovered, Section 541 in Comment (a) qualifies this by saying that where the falsity of the representation is obvious on its face, or a cursory investigation would have revealed the falsity, a party such as appellee is not justified in relying on such representations as were made by appellant in this case. The figures shown to appellee revealed facially the falsity of the representation of annual profits of $75,000.00 to $85,000.00. The lack of experience to which the trial court adverted also would militate in favor of investigation. Moreover, it appears that appellee thereafter had some misgivings about the two and one half trailer loads per month volume, prompting him to ask to speak to the supplier but was gullible enough to be dissuaded from doing so by the statement of appellant that the supplier was very protective about who owned the business, and that it was not in appellee's best interest to disclose that the business was being purchased by him. Such a lame reason why the supplier should not be called may be deemed to have been sufficient to have called for a cursory investigation. When in fact appellee did call the supplier subsequent to the purchase, he claims to have then learned that Baker's, Inc., sold only 17 trailer loads of juice per year.

439

When all the foregoing is considered, I am of the opinion that it was incumbent upon the trial judge to enter specific findings and conclusions relating to reasonable reliance on the claimed misrepresentation. The record before us is devoid of any such findings and conclusions.

The United States Court of Appeals for the Third Circuit was once prompted to chide this Court saying "[t]his Court has had occasion to point out that Rule 52(a) of the Federal Rules of Civil Procedure requires the trier of the facts to find the facts specially and state his conclusions of law thereon with clarity. The findings of facts and conclusions of law must be sufficient to indicate the basis of the trial judge's decision." Citing Kruger v. Purcell, 4 V.I. 361, 363 (3d Cir. 1962) and Island Construction Corporation v. Danielson, 4 V.I. 426, 431 (3d Cir. 1962). See Roberts v. Ross, 5 V.I. 219, 227 (3d Cir. 1965). This Court should demand no less of the Territorial Court of the Virgin Islands.

## II.

With respect to the matter of unclean hands and illegality, it will be recalled that one of the claimed misrepresentations of appellant to appellee was the statement that an additional six trailer loads of juice was sold annually returning a before taxes profit of $30,000.00 annually. These sales represented the "under the table", "off the books", transactions. It is readily apparent that if appellee expected to realize the $75,000.00 annual net profit as represented by appellant, he would necessarily have to engage in the illegal cheating of the Government of the Virgin Islands of tax dollars, which appellant admitted he had been doing. The $30,000.00 profit represents 40% of the $75,000.00 figure. Thus appellee, it would appear, could expect to realize that much gain only if he likewise bilked the public fisc. However, there was no finding, and seems to have been no testimony as to whether appellee did, or whether he did not, carry on this fraud on the Government. In fact the record reveals no finding as to how much profit appellee realized from his operation of the business. Here, too, we are confronted with a severe lack in the findings. And it is important to know how much profit Severe made, and how he made it, before we can reach the finding of fraudulent misrepresentation. If Severe did not indulge in the illegality above mentioned and realized a before tax annual profit of $29,000.00 or a figure reasonably close to that, the necessity of a finding to show how there was a misrepresentation

becomes imperative. On the other hand, if there had been a finding that appellee realized a profit, "on the books", somewhere in the area of $5,000.00, we might see a disparity which would support a finding of misrepresentation with resulting detriment. But here, also, the trial court gives us no clue to its thought processes, by clearly stated findings and conclusions. In this state of affairs, it would appear that a remand is called for to afford appellee the opportunity to show whether or not his hands were clean so that if they were, he might properly proceed on his counterclaim, for if they were not, that counterclaim should not be entertained.

The illegal part of the transaction as pointed out above was supposed to result in a substantial portion of the anticipated profits. On the evidence, the illegality appears to be inextricably intertwined with the alleged fraudulent misrepresentation which forms the basis of appellee's counterclaim. Proper inquiry should have been made into this matter.

It does not matter that the issue of illegality and unclean hands was not raised by either party, either before the trial court or before us on appeal. An appellate court is not precluded from raising, sua sponte, such issues for the first time on appeal. Janke v. Janke, 366 N.Y.S.2d 910 (App. Div. 1975). Cf. Stone v. Stone, 464 N.Y.S.2d 812 (App. Div. 1983). Public policy demands that the appellate court raise such issues, even if for the first time. Thus, is the integrity of the judicial process to be protected. Janke v. Janke, supra, Stone v. Stone, supra. Under the teaching of Tarasi v. Pittsburgh National Bank, 555 F.2d 1152, 1156-59, 1161 (3d Cir. 1977), appellee may prevail on his counterclaim only if his guilt was not equal to that of appellant. The evidence suggests that it may have been. Due inquiry ought to have been made at the trial court level. The illegality which the evidence suggests existed in this case involves, and goes to the essence of, the transaction involved in the counterclaim. It is clearly part and parcel of the subject of that litigation. It does appear to have an immediate and necessary relationship to the equitable relief (rescission) which appellee sought on his counterclaim and, therefore, calls for inquiry upon a remand. Driller Co. v. General Excavator Co., 290 U.S. 240 (1933); Blanchette v. Providence & Worcester Co., 428 F. Supp. 347 (January 17, 1977).

It is upon all the foregoing that I would reverse the portion of the Court's Judgment on appellee's counterclaim adverted to at the beginning of this opinion, and remand the cause for further proceedings in accordance herewith.

## JUDGMENT

THE COURT having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED, ADJUDGED and DECREED:

THAT the judgment of the Territorial Court be, and the same is hereby AFFIRMED.