*619
 
 Gabrielli, J.
 

 In this case we must decide whether claimant, Chairman of the State Bingo Control Commission, is entitled to his salary for that office from April 1, 1975 to September 2, 1975. More precisely, the determinative issue is whether the Legislature in enacting the 1975-1976 budget (L 1975, ch 50) abolished both the State Bingo Control Commission and claimant’s office either by direct action or by implication in failing to expressly appropriate funds for the commission or for claimant’s salary. Both the Court of Claims and the Appellate Division have held that the Legislature had not taken the necessary action to abolish claimant’s statutorily created position. We agree with the determination of the courts below.
 

 Bingo had been legalized in New York State by a 1957 amendment to the New York State Constitution (see NY Const, art I, § 9, subd 2). The State Bingo Control Commission was created in 1962 to rigidly regulate the game of bingo in the State and prevent the infiltration of criminal and other undesirable elements into the game (see Executive Law, art 19-B, §§ 430-439-b; General Municipal Law, art 14-H, §§ 475-499; Report to Governor Rockefeller of Moreland Act Commission [March 1, 1962]). Claimant has been the chairman of the commission since its creation. In June, 1974, he was reappointed to this position for a third five-year term to expire in 1979, and his appointment was confirmed by the Senate. In his 1975-1976 executive budget, the Governor recommended the abolition of the Bingo Control Commission, and budget bill S 3492/A 4509 was introduced to effect that recommendation and transfer the functions of the commission to the State Wagering and Racing Board. The bill was passed by the Assembly but failed to win approval in the Senate and, thus, never became law. The 1975-1976 budget, formally known as "State Purposes Appropriation Bill” (L 1975, ch 50), was passed by the Legislature on March 26, 1975 and signed by the Governor on April 7, 1975. The budget contained no provision relating to the abolition of the Bingo Control Commission or the transfer of its functions to the Racing and Wagering Board. Although no funds were specifically appropriated for the commission or for claimant’s salary, the budget contained a lump-sum appropriation for $399,200 under the title "Regulation of Wagering” earmarked for "Personal service—regular” (L 1975, ch 50, p 240). A portion of these funds was presumably intended for the regulation of bingo activities
 
 *620
 
 in the State.
 
 *
 
 Following the enactment of the budget bill, representatives of the Racing and Wagering Board proceeded to dismantle the Albany and New York City offices of the Bingo Control Commission and purported to terminate its staff and transfer some of the positions to the Racing and Wagering Board. Former employees of the commission who had been transferred to the board were instructed not to provide any information to claimant or perform any work for him. Nonetheless claimant continued to perform and execute his responsibilities as best he could. Claimant received no salary after April 1, 1975 and on April 9, 1975 claimant received a letter from the secretary to the Governor stating that his office was terminated. Claimant, filling a statutorily created office, replied that no action had been taken by the Legislature to abolish the commission and was informed in reply that "[wjhile you are correct in stating that final approval has not been given to the budget bill abolishing your agency * * * assurances have been given * * * that it will be passed in the Senate.” As previously noted, the bill was never enacted into law. On July 29, 1975 claimant filed his claim for salary due. His motion for summary judgment was granted in the amount of $14,966.57, representing his salary from April 1, 1975 to September 2, 1975, the date of the motion.
 

 Events subsequent to the enactment of the 1975-1976 budget are of particular interest in this case. On August 6, 1975, the Governor approved a bill (L 1975, ch 667, § 16) which amended section 169 of the Executive Law by repealing a subdivision thereof and relettering certain other subdivisions, without deleting a subdivision expressly setting forth the salary of the "chairman of the state bingo control commission” (see Executive Law, § 169, subd [j], as amd). The amendment became effective on August 6, 1975 but was made retroactive to April 1, 1975. It is also noteworthy that on January 20, 1976, the Governor submitted, in connection with the 1976-1977 budget, a new budget bill to abolish the Bingo Control Commission (S 7298/A 9268). The bill was identical to that which failed to win legislative approval in 1975 except that it contained the
 
 *621
 
 following provision: "All appropriations made to the State Bingo Control Commission pursuant to Section 1 of Chapter 50 of the Laws of 1975, to the extent of remaining unexpended balances, are hereby transferred to and made available for use by the State Racing and Wagering Board.” This bill died in committee and thus met the same fate as the 1975 bill seeking to abolish the Bingo Control Commission.
 

 It is axiomatic that the Legislature may abolish or shorten the term of positions which
 
 it
 
 has created (see, e.g.,
 
 Lanza v Wagner,
 
 11 NY2d 317, 324;
 
 Nichols v MacLean,
 
 101 NY 526, 533;
 
 Matter of Friedman v D'Antoni,
 
 50 AD2d 9, 10-11, affd 41 NY2d 1004). Thus, in the early case of
 
 Nichols v MacLean (supra,
 
 p 533), it was held that "[t]he legislature may abolish an office during the term of an incumbent, or diminish the salary, or change the mode of compensation, subject only to constitutional restrictions.” It is clear in this case that the Legislature took no express action to abolish the Bingo Control Commission or the office of chairman of that agency. Thus, the issue presented is essentially one of legislative action and intent; may it be inferred from the enactment of the 1975-1976 budget without explicit appropriation of funds for claimant’s salary that the Legislature expressly or impliedly repealed the office of Chairman of the Bingo Control Commission?
 

 Article 19-B of the Executive Law creates the Bingo Control Commission and specifies its purpose and function. Subdivision 1 of section 433 of the Executive Law establishes the position of chairman of the commission, and subdivision 5 thereof provides that "[t]he chairman shall receive compensation fixed by the governor within the amount made available by appropriation therefor.” Subsequent to the adoption of the latter statute, section 169 of the Executive Law (as amd by L 1975, ch 667, § 16) was approved by the Governor and became effective on August 6, 1975, but, by its terms, was made retroactive to April 1, 1975. That section fixes the chairman’s salary, providing that:
 

 "The annual salaries of the officers holding the positions indicated hereinbelow shall be as follows:
 

 * * *
 

 "(j) * * * chairman of state bingo control commission * * * $35,250.”
 

 As we have already pointed out, the initial executive budget
 
 *622
 
 included a bill which would "transfer responsibility for the regulation and control of bingo from the Department of State” to the Racing and Wagering Board by abolishing the bingo commission but this bill failed to win legislative approval. Nowhere in the 1975-1976 budget as enacted by the Legislature is there any provision for the elimination of the Bingo Control Commission or the transfer of its activities. While there is no specific appropriation of funds for the commission or claimant’s salary, there is a lump-sum appropriation for the regulation of wagering. This court has held that in some instances the failure to make appropriation for the salary of one appointed to a statutorily created office may not operate to deprive the office holder of his salary
 
 (O’Neil v State of New York,
 
 223 NY 40, 44; see, also,
 
 Matter of Collins v City of Schenectady,
 
 256 App Div 389, 391). By its failure to pass the législation explicitly accomplishing the result sought by the Governor, or to specifically provide in the budget as finally enacted for the abolition of the bingo commission, the Legislature may be deemed to have expressed an intent not to eliminate the commission or the office of chairman. The Governor’s reintroduction of the bill eliminating the Bingo Control Commission in 1976 quite obviously seems to indicate his own understanding that the Legislature had not, by the mere enactment of the 1975-1976 budget, repealed the applicable sections of the Executive Law.
 

 The doctrine of repeal by implication is heavily disfavored in the law and may be resorted to only in the clearest of cases
 
 (Cimo v State of New York,
 
 306 NY 143, 148;
 
 City of New York v Maltbie,
 
 274 NY 90, 97; see, also,
 
 Matter of Corning v Donohue,
 
 29 NY2d 209, 215; McKinney’s Cons Laws of NY, Book 1, Statutes, § 391; cf.
 
 Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd.,
 
 41 NY2d 84). The rule has been neatly stated that "such repeals [by implication] will not be discovered unless the conclusion is unavoidable, as when repugnancy between the two statutes in plain”
 
 (Cimo v State of New York, supra,
 
 p 148). Moreover, the general rule " 'applies with peculiar force to statutes enacted at the same session of the Legislature’ ”
 
 (County of Saratoga v Saratoga Harness Racing
 
 Assn., 4 NY2d 622, 627, quoting from
 
 Board of Educ. v Rogers,
 
 278 NY 66, 71). The Legislature which enacted the 1975-1976 budget also amended section 169 of the Executive Law without deleting from that statute the express provision for claimant’s salary. We may not conclude, there
 
 *623
 
 fore, that the budget operates as a repeal by implication of section 433 and subdivision (j) of section 169 of the Executive Law since the Legislature itself appears to have recognized that the provision for claimant’s salary in subdivision (j) of section 169 remains an enactment of continuing legal validity in the State (see McKinney’s Cons Laws of NY, Book 1, Statutes, § 376). In sum, the budget bill is a general statute which establishes a lump-sum appropriation for the regulation of wagering; it does not supersede the specific, detailed statutory provisions creating the Bingo Control Commission and its operations.
 

 We turn now to appellant’s contentions that the enactment of the budget was sufficient to repeal the applicable sections of the Executive Law upon which claimant bases his claim for salary. On this appeal, the State advances the argument that subdivision 2 of section 44 of the State Finance Law should be construed to require that the budget must provide a specific appropriation for a public officer’s salary. That statute provides: "Any appropriations for salary, compensation or expenses shall be the salary, compensation or expenses for one year of the officer, employee, office, board, department, commission or bureau for whom or which the same is appropriated, notwithstanding existing provisions of any other statute fixing the annual salary, compensation or expenses of such officer or employee * * * at a different amount.” This section is operative only in the situation in which an actual budgetary appropriation for salary differs from the salary specified in a statute. In such a case subdivision 2 of section 44 provides that the amount of the appropriation is the controlling amount of salary. It does not operate to deprive a public officer of his salary where the budget makes no specific appropriation for salary but only contains a general lump-sum provision for "Personal service”. In fact, it appears that not only did the 1975-1976 budget make no specific appropriation for the salary of the Chairman of the Bingo Control Commission but there are also no specific salary appropriations for any other public officials (except for certain members of the Alcoholic Beverage Control Board in New York City; see L 1975, ch 50, p 20). Indeed, the budget merely contains lump-sum provisions for "Personal service” under the various departmental headings; it cannot be seriously maintained that by virtue of subdivision 2 of section 44 of the State Finance
 
 *624
 
 Law, the vast majority of public officials of the State are not entitled to any salaries.
 

 Appellant also relies on the "Joint Legislative Report of the Senate Finance and Assembly Ways and Means Committee on Actions Taken on the 1975-1976 Executive Budget” as a "precise declaration of Legislative intent” to abolish the Bingo Control Commission and claimant’s position. The report merely indicates the recommendation of the joint committee and obviously is not itself an expression of legislative intent, especially in light of the failure of the bill specifically abolishing the commission to win approval. However, an examination of the portion of the report dealing with regulation of wagering contains no discussion relating to the elimination of the commission. The report (p 85) recites that four nonstatutory positions in the Racing and Wagering Board are abolished, that 14 bingo investigator positions transferred from the Department of State are abolished, and that a position, director of division of bingo, in the Racing and Wagering Board is approved "to design and clarify” the State’s regulatory activities with respect to bingo. There is a conspicuous absence of any language relating to the elimination of claimant’s position or the bingo commission itself. The same reasoning applies with regard to a memorandum from the Deputy Comptroller. The memorandum is dated March 31, 1975 and prior, of course, to the adjournment of the Legislature on July 12, 1975 without having passed any legislation designed to abolish the bingo commission. The memorandum itself noted that substantive legislation abolishing some agencies had not yet been enacted. Obviously, in the face of the failure of such legislation to win final approval, the initialing of the memorandum by the secretaries of the Senate Finance and Assembly Ways and Means Committees may not serve as evidence of legislative intent.
 

 Finally, appellant places considerable reliance on our recent decision in
 
 Matter of Blyn v Bartlett
 
 (39 NY2d 349), which involved the question whether the Administrative Board of the Judicial Conference could validly abolish the positions of confidential attendant in the Supreme Court and law secretary in the Civil Court of the City of New York. Our decision in the case was predicated upon the conclusion that section 222 of the Judiciary Law vested the Administrative Board with the power to abolish such positions despite the provision in section 166 of the Judiciary Law that Supreme Court
 
 *625
 
 Justices shall appoint law assistants. We held that "article 7-A of the Judiciary Law is infused with the idea of centralized control and authority and in section 222 thereof the power to appoint personal assistants is made expressly subject to such control”
 
 (supra,
 
 pp 360-361). In the instant case, respondent’s position is not statutorily conditioned upon the review or approval of any administrative body.
 

 We conclude by emphasizing that this case is not resolved by recourse to the truisms that "[t]he courts do not sit in judgment upon questions of legislative policy”
 
 (Gaynor v Rockefeller,
 
 15 NY2d 120, 134) and that the province of the courts does not extend to the wisdom, necessity or motivation of legislation (see
 
 Kittinger v Buffalo Traction Co.,
 
 160 NY 377, 388, 389). Reliance on these basic jurisprudential principles may not compensate for the absence of required legislative action. The policies of the executive branch in budgetary matters are subject to the approval of the Legislature (NY Const, art VII, §§ 2, 3, 4) and only the Legislature may repeal a validly enacted statute. Under the circumstances presented here we cannot conclude that the Legislature has manifested a clear intent to repeal the existing statutory authority establishing the Bingo Control Commission. In making this determination we do not abdicate our judicial role in derogation of legislative authority. Rather, we only apply the constitutional dictate that the legislative power of the State is vested in the Senate and Assembly (NY Const, art III, § 1). "Thus reads the fundamental law binding on us all, Judiciary, Governor, Legislature”
 
 (People v Tremaine,
 
 281 NY 1, 11).
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs. The court has denied costs because of the excessive length of respondent’s brief (see, e.g.,
 
 Slater v Gallman,
 
 38 NY2d 1; see, also,
 
 Rochester City School Dist. v Rochester Teachers Assn.,
 
 41 NY2d 578).
 

 Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Order affirmed.
 

 *
 

 There is, of course, no claim that there has been any alteration of the comprehensive statutory scheme for the regulation, licensing and supervision of bingo contained in articles 19-B of the Executive Law and 14-H of the General Municipal Law. Thus it remains the legislative policy in this State that “all phases of the supervision, licensing and regulation of bingo and the conduct of bingo games, should be closely controlled and that the laws and regulations pertaining thereto should be strictly construed and rigidly enforced” (Executive Law, § 431; General Municipal Law, § 475).