LEONARD C. SAFF, Respondent, v CLARA M. SAFF, Appellant.

Fourth Department, March 1, 1978

## APPEARANCES OF COUNSEL

*Siegel, McGee, Kelleher, Hirschorn & Munley (Mark G. Hirschorn* of counsel), for appellant.

*Howard F. Crossley* for respondent.

## OPINION OF THE COURT

SIMONS, J.

Appellant has obtained a divorce from respondent because he abandoned her. She appeals from so much of the judgment as denied her alimony and failed to impose a constructive trust on one half of all respondent's separately owned property (with one minor exception). She asserts that our prior decision in *Janke v Janke* (47 AD2d 445, affd 39 NY2d 786) supports her claim for this relief.

In *Janke* a majority of this court affirmed a trial court decision that imposed a constructive trust in favor of a wife upon a one-half interest in her husband's restaurant business. The Court of Appeals affirmed, noting that the case presented largely factual issues. In view of our affirmance of the trial court's findings that the husband had made a promise to his wife which induced her to transfer funds to him, that she had managed the business relying upon this conduct, and that the husband had thereby been unjustly enriched, there was little else the Court of Appeals could do (see CPLR 5501, subd [b]) for the rules of constructive trust are well established and require proof of no more than that (see *McGrath v Hilding,* 41 NY2d 625; *Sharp v Kosmalski,* 40 NY2d 119).

Contrary to the suggestion of appellant's counsel at the trial of this action and renewed here, the decision in the *Janke* case did not presage acceptance of an evolving concept of judicially imposed community property and we know of no appellate court decision which has. Certainly the Court of Appeals affirmance of *Janke* cannot be read to favor such a rule. On the contrary, the important point of *Janke* is that given a confidential relationship and the same factual findings as the majority made there, a constructive trust would have been imposed in any event, whether the parties were married or not.

In this case we do not find evidence to support imposition of a constructive trust and, therefore, we affirm the judgment.

Appellant and her husband were married in 1936. At the time appellant worked as a maid and respondent was unemployed. Over the next few years both worked at various jobs and gradually they accumulated a small reserve of funds which they held in their joint names. In 1946, after a few false

starts, respondent went into partnership with Wallace Dahl and the two men founded Jamestown Fabricated Steel as equal partners. Each man invested $2,000 but Dahl was short of cash and respondent loaned him $1,000 (later repaid) to purchase his half interest. The money for these payments came from the Saffs' joint funds. In 1950 the company was incorporated and the capital stock was divided between respondent and Dahl. The company has prospered over the years and it is now estimated to have a net worth exceeding $500,000. In 1975 it grossed $590,000. Appellant has never had any legal interest in the business or in the corporate stock.

A minority of the court would grant appellant relief by imposing a constructive trust on one half of her husband's stock in Jamestown Fabricated Steel, Inc., upon one half of whatever business profits respondent received from the corporation by way of profit sharing, and upon one half of the annual installments paid to respondent by the corporation to acquire real property formerly owned by him. In the alternative the minority believe her entitled to alimony in some unspecified amount.

■ Before the court may declare that respondent holds his separately owned property as a trustee for appellant's benefit, appellant must prove that there was (1) a promise by him— express or implied, (2) which caused her to transfer property to him relying on the promise, (3) that a confidential relationship existed between the parties and (4) that respondent has been unjustly enriched at her expense by his conduct (*McGrath v Hilding,* 41 NY2d 625, *supra; Sharp v Kosmalski,* 40 NY2d 119, *supra; Janke v Janke,* 47 AD2d 445, affd 39 NY2d 786, *supra).* In deciding these matters on appeal, we are obliged to view the record in a light most favorable to sustain the trial court's judgment and give due deference to its findings on credibility (*Van Roo v Van Roo,* 268 App Div 170, 172, affd 294 NY 731; *McCall v Town of Middlebury,* 52 AD2d 736).

■ Marriage is a confidential relationship, of course, and there was a transfer of funds and labor by appellant to respondent. The remedy of constructive trust, however, requires that more be shown. There must be proof that the transfer was made in reliance on a promise that the property transferred would be held for the benefit of appellant, and that respondent was enriched unjustly by retaining the fruits of the transfer.

We find no express promise by respondent. Appellant testified that from 1946 to 1960, apparently after the purchase of the business, respondent told her on various occasions, "Baby girl, what is mine is yours; you're my wife. It's always all half yours, you're my wife." Such representations undoubtedly reflected the emotions of a happier time but they most assuredly did not constitute a promise by respondent that he held one half of his corporate stock as trustee for appellant (see *Vassel v Vassel,* 40 AD2d 713, affd 33 NY2d 533). The statements meant precisely what most people would interpret them to mean—not that appellant had a proprietary interest in every personal belonging of respondent, be it clothing or corporate stock, but rather that the parties would share their successes equally in raising their family and enjoying their life together.

■ ■ Failing an express promise, appellant contends there was an implied promise. Unquestionably an implied promise may be sufficient if the evidence otherwise supports a finding that respondent holds property as trustee for another *(Sharp v Kosmalski,* 40 NY2d 119, 122; *Sinclair v Purdy,* 235 NY 245, 254; *Janke v Janke, supra; Farano v Stepheanelli,* 7 AD2d 420). Such promises may be inferred from the factual circumstances and setting of the parties and they frequently are when the conduct of the injured party is otherwise inexplicable (see e.g., *Sharp v Kosmalski, supra).* The fact of the marriage is an important consideration indicating a confidential relationship between the parties, but standing alone it does not provide the basis for an implied promise which will support a constructive trust *(Moftiz v Moftiz,* 50 AD2d 901). Furthermore before a court implies a promise between husband and wife for purposes of a constructive trust, it must be careful to separate those promises going to the marriage relationship and those going to a business relationship. The two may not be mixed together in some sort of salmagundi, as the minority has done, to find an implied promise that the wife will share in the ownership of a specific business because of such unrelated acts as her employment as a maid or drill press operator, her care of the children or her handling of the family finances. The remedy of constructive trust may not be applied randomly to adjust general equities between spouses or as a punitive measure to divvy up a husband's separately owned property because of his past indiscretion.

In this case the marriage relationship cuts against a finding

of implied promise to hold one half of respondent's interest in the corporation for the benefit of appellant. Appellant's participation in the buisness is easily explainable as a normal incident of marriage which was manifestly given as such and for the generous salary she received and without any expectation on her part of any future ownership of the business.

Thus, appellant testified that she worked as a bookkeeper for the company, without pay, from 1946 until 1950. In the beginning the work was minimal for the simple reason that the company had little business. Appellant estimated that during those years the books for a whole month could be done in one day and respondent helped her with the tax returns. The work required more time by 1950, when the business was incorporated but appellant has never worked more than 20 to 24 hours per week and she testified that she frequently took the bookkeeping home and completed it there rather than work at the plant. Also, in 1950 the corporation hired an accountant and additional other women employees to do the office work, although appellant continued to do some of the bookkeeping. She has received a salary from the company since 1950. At the time of the divorce her salary from Jamestown Steel was $12,500 per year for this part-time work. During the marriage appellant also worked part time for a doctor for about two years and she did part-time office work for another two years at Jamestown Plastics, another company then owned by her husband.

If any rebuttal is needed to appellant's claim of implied promise, the proof establishes that respondent consistently refused to give his wife any of the company stock or permit her to be an officer or director of any of his corporations and his wishes were well known to her from the beginning. Appellant has never played a management role in respondent's companies, even in the broadest sense. Her work was always part time and entirely clerical and she shared in neither the liability, ownership, nor management of the business.

Thus, while there was a transfer of jointly owned funds to acquire the business, the transfer was not induced by the marriage relationship and was not referable to any express or implied promise of ownership. The funds, or at least appellant's share of them, represented a gift, or at best, a loan by appellant, not an investment made as part of her participation in a joint venture (see *Lindt v Henshel*, 25 NY2d 357, 362-363; *Larsen v Larsen*, 54 AD2d 1073).

Further than that, there was no unjust enrichment of respondent. Appellant has been more than adequately compensated for her efforts and in ways fully to be expected in a marriage. Respondent, by his efforts at developing and operating the business, has kept the couple happily circumstanced for 30 years. All of his earnings from the company were deposited in the couple's joint accounts and were used to support appellant. Generous purchases of property and investments were made from these funds for her and respondent's income has been sufficient to enable her to travel and to enjoy the satisfying social and athletic life which she described in her testimony as the routine of "the most beautiful marriage in the world." Appellant will continue to enjoy the support available through respondent's efforts, by the separately owned property accumulated for her or, if her needs require it, by respondent's income for as long as he is able to do so. There is no need for a division of respondent's capital. The protection afforded appellant by the Domestic Relations Law will provide the support function in the manner the Legislature has approved.

We should point out that appellant is not penniless. She came to this marriage with few material assets but she has lived a financially secure life for over 30 years since then. The trial court granted her exclusive, tax-free use of the marital residence and the extensive furnishings in it. She has joint ownership in $100,000 in stocks, several thousand dollars of various stocks in her own name, $15,200 in savings and ownership of a sizeable insurance policy on her husband's life. In addition to this, she receives $12,500 a year income from her part-time employment at Jamestown Steel and she has dividend income of $3,600 per year. Neither the trial court nor the majority of this court find alimony justified on these facts.

This case is a vivid illustration of the dangers of creating a judicial version of a community property law. In these days of sophisticated taxes and governmental regulation, a businessman or businesswoman ought to be able to determine whether his or her spouse is a partner in business, a partner in marriage, or both, without obtaining a judicial decree, after the fact, based upon nebulous and subjective concepts of what is equitable. The result sought by appellant here would foist an unwanted business partner on respondent and the innocent Mr. Dahl (who is still a half owner of the corporation's stock),

a business partner who may be motivated by considerations unrelated to the best interests of Jamestown Steel, those who own it and those who are employed by it. It is one thing to make an equitable adjustment of real and personal property of divorced spouses. It is quite another thing for a court of equity to trifle with corporate enterprises involving the vital interests of innocent third parties.

The judgment should be affirmed.

CARDAMONE, J. (dissenting). The parties to this litigation had been married for over 40 years at the time of their divorce in 1974. In the course of their divorce proceeding the wife, Clara M. Saff, sought to have a constructive trust imposed on real and personal property which was held only in the name of her husband, Leonard C. Saff. The trial court granted Mrs. Saff a divorce from her husband on the ground of abandonment and awarded her exclusive possession of their jointly owned marital residence in Jamestown, New York; it dismissed, however, her cause of action for a constructive trust on the property held in her husband's name and denied her request for alimony. The majority hold that this judgment should be affirmed. We disagree. In our view a constructive trust should be imposed at least on certain corporate stock held solely in the husband's name.

Under well-settled law "[a] constructive trust will be imposed where one party holding title to property is under an equitable duty to convey it to another" (Janke v Janke, 47 AD2d 445, 447-448, affd 39 NY2d 786). A constructive trust is a species of implied trust arising out of a lien recognized in equity, but whose existence or obligation is not known or enforced at law. Its origin is ascribed to Roman law from which it was early imported into the equity jurisprudence of England; it arises from the tacit consent or implied agreement of the parties (3 Story's Equity Jurisprudence [14th ed], §§ 1590, 1622, 1626, 1627). It has been long accepted as a viable principle in New York (Matter of O'Hara, 95 NY 403, 415). However, in order for a constructive trust to be found, four factors must be present: (1) a confidential or fiduciary relation; (2) a promise, express or implied; (3) a transfer in reliance thereon; and (4) unjust enrichment (McGrath v Hilding, 41 NY2d 625, 628-629; Sharp v Kosmalski, 40 NY2d 119, 121; Janke v Janke, supra).

## I. THE CONFIDENTIAL RELATION

Generally, marriage imparts a relationship of confidential-

ity. Indeed there are few, if any relationships that involve the imposition of trust and confidence to the same extent that a marriage relationship does. Where, as here, the wife has entrusted her husband with their joint property and he assumed dominion over it, such dominance is also a factor which must be considered in determining whether a confidential relationship exists (Bogert, Trusts and Estates [2d ed], § 482). The majority agrees that there is a confidential relationship.

## II. THE PROMISE

The wife claimed that her husband had made her an oral promise of one half of his property which she alleges should be the subject of a constructive trust. Even absent an express, promise, however, a constructive trust may be imposed (*Sharp v Kosmalski,* 40 NY2d 119, 122, *supra; Sinclair v Purdy,* 235 NY 245, 254; *Janke v Janke,* 47 AD2d 445, 448-449, *supra; Matter of Wells,* 36 AD2d 471, 474, affd 29 NY2d 931). Further, such a promise or understanding may be inferred from the factual setting and circumstances. Even "[t]hough a promise in words was lacking, the whole transaction, it might be found, was 'instinct with an obligation' imperfectly expressed (*Wood v. Duff-Gordon,* 222 N.Y. 88, 91)" (*Sinclair v Purdy, supra,* p 254; *Goldsmith v Goldsmith,* 145 NY 313, 318). The implication of a promise here finds support in many circumstances.

The trial court found that Mr. Saff told Mrs. Saff that "what is mine is yours; you're my wife. It's always half yours". In addition, Mrs. Saff consistently testified that "we", referring to Mr. Saff and herself, went into the business together. The trial court refused to impose a constructive trust, however, in part because it concluded that Mrs. Saff knew what assets were treated as joint properties and which were not so treated. The majority affirm this determination holding that the statements that Mr. Saff made to his wife were not promises but merely a representation which "reflected the intentions of a happier time" and that these statements should be construed to mean only that this couple would share their earnings equally in "raising their family and enjoying their life together".

Such characterization does not square with the circumstances and pattern of this couple's life together. From the beginning everything was shared. At the outset of their marriage while Mr. Saff looked unsuccessfully for employment,

the Saffs resided in a home where Mrs. Saff worked without pay as a maid for their joint room and board. Before coming to Jamestown, New York, the couple lived and worked in various parts of the country. Sometimes one or the other, occasionally both, would have employment. In those years Mrs. Saff worked at the Lionel Train Corp., General Instruments and Standard Oil Company of New Jersey. She was able to do welding, worked on assembly lines and learned to operate all kinds of machinery, including drill presses. She worked a 58-hour week at 60 cents per hour. Regardless of whether one or both worked, however, the Saffs' savings were always jointly held. They did more than jointly share their earnings. The first home they purchased and their marital home were jointly owned. Most persuasive are the circumstances surrounding Jamestown Plastics. Jamestown Plastics was a business in which Mrs. Saff performed the same duties as she did at Jamestown Steel. Later, it was incorporated. At the time of its sale in 1970, however, the proceeds of this plastics business enterprise were invested by Mr. Saff in jointly owned stock. This act is consistent with his promise concededly made during their marriage that everything was to be shared equally between them, despite the fact that Mr. Saff testified that he would never permit Mrs. Saff to hold any stock or serve as an officer or director of any corporation that he had anything to do with. This investment was made in a "happier time"; and, it is only as a result of their marital difficulties that the husband no longer wishes to share half and half with his wife assets held solely in his name. The facts and circumstances of the parties' life together flatly contradict the notion that Mr. Saff's promise was merely a representation made in a "happier time". Rather, this was a promise made by a husband to his wife which he consistently kept until he decided to abandon her.

### III. THE TRANSFER IN RELIANCE

Mrs. Saff tranferred her share of jointly held savings to start Jamestown Steel and rendered valuable services in the early development of this business in reliance on the belief that she shared in the ownership of it. A significant portion of the funds used to launch Jamestown Steel in 1946 was derived from the joint earnings of Mr. and Mrs. Saff and held by them together in a joint account. The business was started in a small, rented garage. The two men spent much of their time

selling while Mrs. Saff stayed in the garage next to the telephone. The first load of steel beams the company received were too large to fit into the garage, so Mrs. Saff painted them in order to prevent them from rusting. She ran the office, did the banking, bookkeeping, kept all the books and ledgers, talked to creditors, made out the payroll and other checks, paid the bills, filled out government forms, handled collections and did the tax accounting. She also acted as a secretary. In addition to this work in the family business, Mrs. Saff also worked for a period of time in a doctor's office without pay for three hours per week in order to compensate the doctor for the shots he gave to aid her in becoming pregnant. When the Saffs were unsuccessful in having their own children, they adopted two children. The first adopted child contracted polio and in order for Mrs. Saff to give him the constant care required, she was obliged to bring the company's book work home at night where, her husband concedes, she questioned him endlessly about all transactions in order to keep the business records accurate. Another enterprise called Jamestown Plastics was later launched by the Saffs. Mr. Saff testified that his wife performed full-time duty for this enterprise while also continuing her work for Jamestown Steel. Both parties agreed that Mrs. Saff also handled all of the personal family finances. In brief, it seems an inescapable conclusion that Mrs. Saff was the financial member of this husband-wife team, in business and at home. Mr. Saff himself testified that his wife has been associated with him in business from 1946 to the present. To this very day Mrs. Saff continues to be the steel business bookkeeper. Although the husband testified that she did not begin work until six or eight months after the business had commenced, his testimony is contradicted by the fact that all the business records reflect that the entries from the very first day of business were in Mrs. Saff's handwriting. Mrs. Saff's knowledge that her husband was to hold corporate stock solely in his own name is not a determinative factor that should shield the husband from the imposition of a constructive trust since the transfer by Mrs. Saff was made in reliance on an express or implied promise that she was to share equally in its ownership. Property transferred in reliance upon a promise made in a confidential relationship will prompt a court of equity to impose a constructive trust (*Sharp v Kosmalski,* 40 NY2d 119, 122, *supra).*

## IV. THE UNJUST ENRICHMENT

We cannot agree with the majority and the trial court that

there was insufficient proof that the husband was unjustly enriched by his sole retention of all interest in Jamestown Fabricated Steel. Contemporary concepts of what is fair between a husband and wife should be applied, but not within a vacuum. The over-all equities between the parties must be assessed in order to reach a realistic determination "based on a broad view of the human setting involved" (see *McGrath v Hilding,* 41 NY2d 625, 629, *supra; Sharp v Kosmalski,* 40 NY2d 119, 123, *supra;* Foster and Freed, Marital Property and the Chancellor's Foot, 10 Fam L Q 55, 72-73). Where legal title to property has been obtained under circumstances evincing such a confidential relationship which render it unconscionable for the holder of legal title to retain and enjoy the beneficial interest, equity will impose a constructive trust (4 Pomeroy's Equity Jurisprudence [5th ed], §§ 1053, 1056a; Bogert, Trusts and Estates [2d ed], § 482). As Judge CARDOZO succinctly put it, "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee" *(Beatty v Guggenhein Exploration Co.,* 225 NY 380, 386; 5 Scott, Trusts [3d ed], §§ 462, 462.2).

Since appellant wife seeks here an equitable remedy, it is important to note that in granting Mrs. Saff a divorce from her husband on the grounds of abandonment, the trial court found that Leonard Saff had left the marital residence in 1972 and has not returned. It further found that Clara Saff had made her husband welcome in their home and never interfered with him or subjected him to any public criticism or ridicule before the separation; and that her complaints, in private, about his drinking were prompted by reason of a warning given by a family doctor. It should also be noted that 12 years prior to this separation Mr. Saff had fathered a child by another woman and that Mrs. Saff forgave him for this and continued their marriage.

The picture presented by the record in this case is that of a husband and wife who saved, invested and worked side by side in order to start and develop a successful business. The wife had a right to rely on the express or implied understanding that she would share equally with her husband in the ownership of the assets acquired by their joint efforts and savings. To permit the husband to retain solely to himself all of the business assets to which each contributed time and money and

which each rightfully expected to share, in our view, constitutes unjust enrichment of the husband at the wife's expense *(Janke v Janke,* 47 AD2d 445, 448-449, *supra).*

We agree with the majority that courts should not sit as superlegislators and enact community property law by judicial decree. Contrary to the majority's claim, we do not seek to establish judicially the rule of community property between these parties. Rather we are simply imposing a constructive trust *only* upon the Jamestown Steel stock and the incidents thereto held solely in the husband's name because with respect to that property the four factors of confidential relationship, promise, transfer in reliance on the promise and unjust enrichment are all present.

The majority's concern that imposing a trust in this case would "trifle with corporate enterprises involving the vital interests of innocent third parties" is unwarranted inasmuch as the trust sought to be imposed is only upon freely transferable corporate stock and the incidents thereto. Further, the concern for the rights of an innocent third party is not supported by the facts since Mr. Dahl (Mr. Saff's former partner) retired eight years ago.

Restitution should result in a restoration of both parties to a position of *status quo* (5 Scott, Trusts [3d ed], § 462.2) and, ordinarily, the measure of restitution is the amount of enrichment received (Restatement, Restitution, § 1, Comment *a).* Therefore the constructive trust imposed on respondent's interest in Jamestown Fabricated Steel, Inc. should result in appellant obtaining one quarter of the stock of the business (since her husband owns one half of it), one half of whatever business profit he receives annually and also one half of the yearly payment made to Leonard Saff as a result of the sale of the real property on which the business is located to the corporation.

We would not impose a constructive trust on the real property in Randolph, New York, because, although a promise may be found, there is lacking in the transaction sufficient proof of unjust enrichment; nor would we impose a constructive trust on one half of the common stock held solely in Mr. Saff's name amounting to $60,000. This stock was obtained after the parties separated in 1972 and there is no evidence of any promise with respect to it, without which no constructive trust may be imposed.

Finally, the majority refuses to impose a constructive trust

and has also affirmed the denial of alimony in this case. We disagree with the latter as well as the former. Absent the imposition of a constructive trust which would enhance the wife's present financial condition, we believe that alimony should be awarded to provide suitably for the wife considering the parties' established standard of living, their age and health and, to a limited extent, their conduct (Domestic Relations Law, § 236; *Kover v Kover,* 29 NY2d 408, 415).

Accordingly, we dissent and vote to modify the judgment as set forth in this opinion and, as modified, it should be affirmed.

MOULE, J. P.. and HANCOCK, JR., J., concur with SIMONS, J.; CARDAMONE and DENMAN, JJ., dissent and vote to modify the judgment, in an opinion by CARDAMONE, J.

Judgment affirmed, without costs.