**SILVER DOLLAR MOTEL, INC.,**
**Appellant (Defendant),**

v.

**TAYLOR ELECTRIC COMPANY,**
**Appellee (Plaintiff).**

No. 88–31.

Supreme Court of Wyoming.

Sept. 27, 1988.

Jack Gage and Robert T. Moxley of Whitehead, Gage & Davidson, P.C., Cheyenne, for appellant.

Jack A. Smith, Rock Springs, for appellee.

Before BROWN, C.J., THOMAS, CARDINE and MACY, JJ., and ROONEY, Retired J.

ROONEY, Retired Justice.

This appeal is from a judgment awarding appellee, on the theory of quantum meruit, the cost of improvements made by it to appellant's real property under a contract between it and appellant's former tenant who took bankruptcy before paying appellee for the improvements.

We reverse.

Appellant words the issues on appeal:

"1. The trial court erred as a matter of law in ruling that the remedy of quantum meruit is available to the plaintiff, an electrical contractor, who having failed to foreclose a statutory lien against the defendant's property, and not being in privity with the defendant property owner, lost the benefit of his bargain upon the insolvency of the defendant's lessee, with whom he had contracted to make the improvements on the leased premises.

"2. The trial court erred by applying an incorrect measure of damages, i.e., the contract price, for improvements to the defendant's leased premises, rather than the amount by which the defendant may have been actually enriched, i.e., the enhanced value of the improved premises."

Appellee words them:

"1. Whether the [ ] equitable remedy of quantum meruit is available to the Plaintiff for recovering his costs for improvements made on the Defendant's property if Defendant's lessee becomes insolvent.

"2. Whether the trial court awarded the correct amount of damages to the Plaintiff by using the contract price as a measure of the damages."

The basic facts in this case are not in dispute. Appellant, as owner of real property in Rock Springs, leased a portion of one of the buildings on the property to R. Lynne Pfeiffer (hereinafter referred to as "lessee"). In 1984, lessee and appellee entered into a contract under which appellee would do electrical remodeling work in the leased area of the building, i.e., the restaurant and lounge area. Appellee did the work, but lessee filed bankruptcy proceedings before paying for it. Appellee was listed as a creditor in the bankruptcy. Although notified of the bankruptcy proceedings, appellee did not file a proof of claim therein. Appellant was aware of the contract between lessee and appellee. Appellant's manager, D.T. Cook, was present daily during the time the work was being performed. He was "interested" but did not request any changes or "issue instructions to any" of appellee's employees. At Cook's request, appellee ran a one and one-quarter inch conduit to a power panel instead of a one inch one so there would be sufficient power to supply an office which appellant contemplated at a later time in the building. The difference in cost was "not a great deal." Later, appellee did electrical work for appellant on the office and elsewhere, and appellee was paid for such work by appellant.

Appellant agreed with lessee that lessee would be given "full credit against his

lease over time" for the cost of remodeling, the lease being for three years with an option to renew for three years. It was a percentage lease with a minimum of $3,000 per month and utilities. There was no evidence as to the amount of credit for the cost, if any, that had been given to lessee by appellant prior to the time lessee breached the lease and filed bankruptcy. Nor is there any evidence as to whether or not the balance of the credit, if any, was listed as an asset in the bankruptcy or whether the obligation of lessee on the lease was listed therein as a debt.

Appellee filed a mechanic's lien against the property for the electrical work but did not foreclose it in a timely fashion. Other mechanic's liens were filed against the facility as a result of lessee's bankruptcy. One went to judgment and was settled for "something in excess of $5,000."

There was testimony that the materials and labor furnished by appellee for the project amounted to $15,780.56 (the amount of the judgment), but there was no other evidence of the amount and nature of damages or of the "enrichment." Some of the electrical work performed by appellee was abandoned and not used by the new tenant leasing the space after lessee broke the lease with appellant and filed for bankruptcy.

### AVAILABILITY OF QUANTUM MERUIT REMEDY

■■■■ The law as applied to these particular facts will not sustain a judgment for appellee "under the equitable theory of Quantum Mer[u]it," as requested in the amended complaint. The elements necessary to support recovery under an unjust enrichment theory were set forth by this court in *Pancratz Company, Inc. v. Kloefkorn–Ballard Construction/Development, Inc.,* 720 P.2d 906, 908–09 (Wyo. 1986):

"The elements necessary to support a claim for relief based upon quantum meruit are:

"1) Valuable services were rendered, or materials furnished,

"2) to the party to be charged,

"3) which services or materials were accepted, used and enjoyed by the party, and

"4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched.

\*    \*    \*    \*    \*    \*

"The central issue to the disposition of this case is whether appellee was unjustly enriched by the work performed by appellant. Not only must we find enrichment, but such enrichment must be unjust. *Bereman v. Bereman,* Wyo., 645 P.2d 1155 (1982); *Rocky Mountain Turbines, Inc. v. 660 Syndicate Inc.,* Wyo., 623 P.2d 758 (1981); *McGrath v. Hilding,* 41 N.Y.2d 625, 394 N.Y.S.2d 603, 363 N.E.2d 328 (1977)."

At least some of the services and materials here rendered or furnished by appellee were not "used and enjoyed" by appellant as required by the third element (supra), and the evidence does not reflect the existence of the fourth element (supra) in that the expectation for payment was shown to be by lessee and not by the person now sought to be charged, i.e., not by appellant. Not only do the facts surrounding the arrangement for the work and its accomplishment show expectation that payment would be made *by lessee,* but also the failure to perfect a lien against appellant's property shows such expectancy.[1] Additionally, the "unjust" actor of the enrichment (referred to in *Pancratz Company, Inc.,* 720 P.2d at 908–09) was not established by the evidence. The quantum meruit/unjust enrichments theory is founded on implied con-

---

1. The failure of appellee to perfect its statutory mechanic's lien remedy does not otherwise weaken its position since W.S. 29–1–308 provides: "The remedies provided by this title are not exclusive." The title reference is to that pertaining to mechanic's liens, W.S. 29–1–101, et seq.

tract—one that is dictated by equity. *Pancratz Company, Inc.*, 720 P.2d 906. When applied to situations akin to that of this case, it has the same purpose as do enactments of "mechanic's lien" statutes[2] and "betterment" or "occupying claimant" acts,[3] i.e., for the purpose of limiting the rigid common law to the effect that one could not be compensated for improvements placed on real property belonging to another without the other's consent. *Arch Sellery, Inc. v. Simpson*, 346 P.2d 1068 (Wyo.1959); 41 Am.Jur.2d, Improvements, § 4 (1968). These statutory remedies are limited by the specific requirements and provisions contained in them. *Arch Sellery, Inc.*, 346 P.2d 1068; *Wyman v. Quayle*, 9 Wyo. 326, 63 P. 988 (1901). Likewise, the quantum meruit/unjust enrichment remedy is limited by the requirements necessary for an equitable result (those enumerated in *Pancratz Company, Inc.*, 720 P.2d 906), including the requirement that the enrichment be "unjust." In *Rocky Mountain Turbines, Inc. v. 660 Syndicate, Inc.*, 623 P.2d 758, 764 (Wyo.1981), this court quoted with approval from *McGrath v. Hilding*, 41 N.Y.2d 625, 629, 394 N.Y.S.2d 603, 606, 363 N.E.2d 328, 331 (1977):

> " 'Enrichment alone will not suffice to invoke the remedial powers of a court of equity. Critical is that under the circumstances and as between the two parties to the transaction the enrichment be unjust.' "

The combination of the facts in this case does not reflect the enrichment, if any, to have been unjust so as to warrant the application of equity in appellee's favor. The non-performance of the contract between appellee and lessee was not the fault of appellant. Appellant and appellee were both harmed by lessee's breach of contract with appellant. The evidence does not reflect the terms of the lease between appellant and the tenant replacing appellee. We cannot assume it to have been as profitable for appellant as was the lease breached by lessee.

In most instances, the circumstances in a case of unjust enrichment involve only the claimant and the one alleged to be unjustly enriched. See comments and examples in Restatement of the Law of Restitution. In this case, a third party is also involved. The third party, lessee, entered into an express contract with appellee for the services and materials. This fact, known to appellant, tends to mitigate against *implying* the existence of a contract for the same services and materials between appellant and appellee.

> "A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person."

Restatement of the Law of Restitution, § 110 at 455 (1937).

The trial court expressed concern[4] over the agreement by appellant with lessee under which appellant would reimburse lessee through decreased rental payments over a period of time for the costs of the electrical work performed by appellee for lessee. Obviously, part of the consideration to be received by appellant for this agreement to reimburse was to be the net rental payments, after the deduction for reimbursement, together with the availability of restaurant and lounge facilities to motel customers of appellant. Appellant did not receive this consideration when lessee breached his lease contract, and there is nothing

---

2. Such statutes provide for an in rem action against property upon which the claimant bestowed labor or materials for which he has not been compensated. As noted supra, appellee abandoned this remedy in this case.

3. When one in possession and claiming ownership of land is being evicted by another proving better title, the Wyoming act (W.S. 1–32–206, et seq.) requires payment to the one being evicted for value of improvements made by him. The act is not applicable under the facts of this case.

4. The trial court requested counsel to address in closing arguments the question of "whether or not the Defendant stepped into the shoes of Mr. Pfeiffer [lessee], as to paying the costs of remodeling," and the issue was referred to in the trial court's opinion letter. (The letter was not incorporated by reference into the judgment, but it is part of the record.)

in the record reflecting the amount or value of the lost consideration or showing any knowledge on the part of appellee of the agreement to reimburse.

Finally, if, because of the agreement to reimburse, appellant were to be considered as stepping into the shoes "of lessee with respect to lessee's debt to appellee" (see note 4, supra), such should be, with all of the circumstances existing between lessee and appellee for payment, including a recognition that some payment may have been made if appellee had filed a creditor's claim in lessee's bankruptcy.[5] The record does not reflect what portion, if any, of appellee's claim would have been satisfied from lessee's assets held by the trustee in bankruptcy, if such claim had been filed. The only evidence in this respect was testimony by Graham B. Taylor, owner and operator of appellee:

"Q. Do you know how much money was paid to the unsecured creditors in the Pfeiffer bankruptcy?

"A. No, I don't.

"Q. Do you know if the Pfeiffer bankruptcy is finalized?

"A. I think it is.

"Q. Do you know how much money you would have received as an unsecured creditor in that bankruptcy if you had filed a proof of claim?

"A. No."

The claim for relief based on quantum meruit here requested by appellee is not available to it since the elements necessary to support such claim, including the element that the enrichment be unjust, as set forth in *Pancratz Company, Inc.*, 720 P.2d 906, are not present.

## PROPER MEASURE OF DAMAGES

Our decision on the first issue presented on appeal makes unnecessary consideration of the second issue relative to the proper measure of damages.

REVERSED.

---

5. Reference is here made to the possible result of appellee's failure to file the claim only for the purpose of addressing the attention given by the trial court to the reimbursement factor. The issues in this case can be resolved without giving consideration to the failure to file the claim as it may pertain to such as mitigation of damages, the collateral source rule, etc.