■ In the Matter of the Estate of SEYMOUR GROSSMAN, Deceased. SETH GROSSMAN et al., Appellants; BRANDON R. SALL, as Executor, Respondent. [621 NYS2d 44] —Order, Surrogate's Court, New York County (Renee Roth, S.) entered May 12, 1994, which denied the motion of objectants Seth, Joy and Stanley Grossman to quash a subpoena; directed objectants' attorneys to produce documents to attorneys for the executor-petitioner; and directed oral examination of two of objectants' attorneys, Lester Tanner and Mitchell Lapidus, unanimously reversed, on the law, the facts and in the exercise of discretion, and the motion granted.

Order of the same court and Surrogate, entered June 23, 1994, which denied a motion by said objectants to compel oral examination of executor-petitioner and of his attorneys, Douglas Moore and Herbert Nass, and to compel production of documents by Mr. Nass, and granted a cross motion by executor-petitioner for sanctions to the extent of directing certain document production by counsel for objectants, and otherwise held the cross motion in abeyance, unanimously reversed, on the law, the facts and in the exercise of discretion, the motion is granted and the cross motion denied, all with one bill of costs.

In this proceeding for a voluntary accounting commenced by respondent co-executor Brandon R. Sall, appellants object to this proponent's account on the ground that it provides for payment of allegedly excessive legal fees for services rendered during the course of both his and his predecessor's administration of the estate. The controversy is embittered by the contention of the account proponent and his counsel, the Wohl Newman law firm, that a large proportion of the legal work was due to the obstructive conduct of the objectants and their counsel, the Tanner Propp law firm.

Incident to discovery on the legal fee issue, in April 1994 Mr. Sall caused to be served two broad subpoenas duces tecum upon the Tanner Propp firm, directing Mr. Tanner and his partner to produce certain documents in the form of time sheets and back-up materials, and to testify concerning all work done by them and their law firm in the Grossman estate.

The Surrogate's Court erred in refusing to quash these subpoenas insofar as they sought testimony from the Tanner Propp witnesses concerning their time records and related

expenditures. The account proponent's intent was to show that a significant proportion of his counsel's services was in response to initiatives from Mr. Tanner. In that case, it would be more efficient and far less intrusive to require that such a showing be based on documents already available to the account proponent, such as motion papers filed by Mr. Tanner, letters sent by him, etc. If vexatious and unnecessary correspondence from Tanner Propp caused Wohl Newman extra work, the account proponent should be able to demonstrate as much by using Wohl Newman's file copies of the correspondence and records of its own reactive activities. If a burden arose from harassing phone calls, Wohl Newman's own time records would reflect both the telephone time and the resulting reactive activity. The same is true for allegedly vexatious motions, discovery demands, court conferences or any other legal work; no reason is shown why Wohl Newman cannot document its own activities from its own records.

In *Match v Match* (168 AD2d 226), the Supreme Court had similarly ruled that the non-titled spouse in a matrimonial action was entitled to use time records produced by her ex-husband's attorneys to prove the value of her own attorney's services. Reversing, we held it "an abuse of discretion to shift the burden of proving plaintiff's counsel's fee to the defendant's counsel, by utilizing defendant's counsel's time records to assist in determining the reasonableness of the plaintiff's counsel's request for attorney's fees" *(supra,* at 227).

The circumstances adverted to in Justice Ellerin's concurring opinion in *Match,* which might possibly support a different result, are absent here. Simply because Tanner Propp is not charging its clients for its services does not render the contest unequal in the resources available to the contending parties.

It was also error for the Surrogate to deny objectants' motion for oral examination of the proponent, attorney Douglas Moore, and his predecessor, Herbert Nass, concerning any previous co-counsel relationships and fee-sharing arrangements which might have impacted improperly to enlarge the legal fees sought to be imposed upon this estate.

An executor seeking approval of a voluntary accounting is, as then Surrogate Samuel J. Silverman noted, held to a fiduciary duty *(see, Matter of Sage,* 54 Misc 2d 779, 780). Where there is a fiduciary duty, judicial attention focuses upon equitable considerations, with particular concern for avoiding or correcting any abuse of the relationship that

would result in unjust enrichment *(see, e.g., McGrath v Hilding,* 41 NY2d 625, 629). A fiduciary duty carries with it a duty of conscientious fairness and morality *(Aronson v Crane,* 145 AD2d 455, 456).

Objectants have the right, under SCPA 2211 (2), to a broad examination of the account proponent under oath, limited only by judicial supervision to prevent abuse *(see, In re Davidson's Estate,* 89 NYS2d 221, 222). The statute gives the examiner even wider latitude than pertinent general discovery rules *(see, In re Schade's Estate,* 61 NYS2d 908). Concur— Murphy, P. J., Rosenberger, Wallach, Kupferman and Asch, JJ.